UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFE ENRICHMENT FOUNDATION, individually and on behalf all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, and JEFFREY N. EDWARDS,<br><br>                Defendants. | **ELECTRONICALLY FILED**<br><br>CIVIL ACTION No. 07cv9633 (LBS) |
| MICHAEL J. SAVENA, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, and JEFFREY N. EDWARDS,<br><br>                Defendants. | CIVIL ACTION No. 07cv9837 (LBS) |

[Additional Captions on Following Page]

**DECLARATION OF ROBERT N. KAPLAN IN FURTHER SUPPORT OF THE MOTION OF STATE TEACHERS' RETIREMENT SYSTEM OF OHIO FOR (I) CONSOLIDATION; (II) APPOINTMENT AS LEAD PLAINTIFF; AND (III) APPROVAL OF LEAD PLAINTIFF'S CHOICE OF CO-LEAD COUNSEL AND IN OPPOSITION TO JAMES CONN'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF FOR THE FIRST REPUBLIC MERGER CLASS AND APPROVAL OF LEAD COUNSEL**

| | |
|---|---|
| GARY KOSSEFF, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, and JEFFREY N. EDWARDS,<br><br>                Defendants. | CIVIL ACTION No. 07cv10984 (LBS) |
| ROBERT R. GARBER, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, AHMASS L. FAKAHANY, GREGORY J. FLEMING, and JEFFREY N. EDWARDS,<br><br>                Defendants. | CIVIL ACTION No. 07cv11080 (LBS) |

| | |
|---|---|
| JAMES CONN, individually and on behalf of all others similarly situated, | CIVIL ACTION No. 07cv11626 (LBS) |
| Plaintiff, | |
| v. | |
| MERRILL LYNCH & CO., INC., E. STANLEY O'NEAL, JEFFREY N. EDWARDS, LAWRENCE A. TOSI, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, and CHARLES O. ROSSOTTI, | |
| Defendants. | |

I, ROBERT N. KAPLAN, declare the following under the penalty of perjury:

1.      I am a partner at the law firm of Kaplan Fox & Kilsheimer LLP.

2.      I am admitted to practice before this Court and am a member in good standing.  I respectfully submit this Declaration in Further Support of the Motion of State Teachers' Retirement System of Ohio's  ("Ohio STRS") for (I) Consolidation; (II) Appointment as Lead Plaintiff; and (III) Approval of Lead Plaintiff's Choice of Co-Lead Counsel and in Opposition to James Conn's Motion for Appointment as Lead Plaintiff for the First Republic Merger Class and Approval of Lead Plaintiff.

2.      Attached hereto are true copies of the following documents:

A.      Exhibit A; *Pappas v. Countrywide Financial Corp.,* No. 07-05295 (C.D. Cal. Nov. 28, 2007).

B.      Exhibit B; Excerpt from Prospectus filed with the SEC on Form S-4 on May 8, 2007 in connection with the Merrill Lynch-First Republic merger.

C.      Exhibit C; Excerpt from 2006 Annual Report of First Republic.

Dated:  January 18, 2008

                                                        /s/ Robert N. Kaplan
                                                             Robert N. Kaplan

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 18, 2008, I caused to be electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will electronically send notification of such filing to the registered participants and paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants as of January 18, 2008.

/s/      Aviah Cohen Pierson
Aviah Cohen Pierson

January 18, 2008

2

# EXHIBIT A

**UNITED STATES DISTRICT COURT**

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE PAPPAS, On Behalf of Himself and All Others Similarly Situated, | Case No.: CV-07-05295-MRP (MANx) ✓ |
| Plaintiff, | ORDER CONSOLIDATING CASES AND APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL |
| v. | |
| COUNTRYWIDE FINANCIAL CORP., ANGELO MOZILO and ERIC P. SIERACKI, | |
| Defendants. | |

| | |
|---|---|
| NORFOLK COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | Case No.: CV-07-05727-MRP |
| Plaintiff, | |
| v. | |
| COUNTRYWIDE FINANCIAL CORPORATION, ANGELO R. MOZILO, DAVID SAMBOL, ERIC P. SIERACKI, and STANFORD L. KURLAND, | |
| Defendants. | |

*(Additional Captions Follow)*

-1-

JACK MCBRIDE, Individually and On Behalf
of All Others Similarly Situated,

                  Plaintiff,

      v.

COUNTRYWIDE FINANCIAL
CORPORATION, COUNTRYWIDE HOME
LOANS, INC., COUNTRYWIDE CAPITAL
V., CITIGROUP GLOBAL MARKETS INC.,
JP MORGAN SECURITIES INC., MERRILL
LYNCH, PIERCE, FENNER & SMITH
INCORPORATED, MORGAN STANLEY &
CO. INCORPORATED, UBS SECURITIES
LLC, WACHOVIA CAPITAL MARKETS
LLC, ANGELO R. MOZILO, KATHLEEN
BROWN, HENRY G. CISNEROS, JEFFREY
M. CUNNINGHAM, ROBERT J. DONATO,
MICHAEL E. DOUGHERTY, MARTIN R.
MELONE, ROBERT T. PARRY, OSCAR P.
ROBERTSON, KEITH P. RUSSELL,
HARLEY W. SNYDER, DAVID SAMBOL,
ERIC P. SIERACKI, ANDREW GISSENGER,
III, and CARLOS M. GARCIA.

                  Defendants.

Case No. CV-07-06083-MRP

1
2  SARATOGA ADVANTAGE TRUST On          Case No. CV-07-06635-MRP
3  Behalf of Themselves and All Others
4  Similarly Situated,
5
6              Plaintiff,
7        v.
8  COUNTRYWIDE FINANCIAL
9  CORPORATION, ANGELO R. MOZILO,
10 DAVID SAMBOL, ERIC P. SIERACKI, and
11 STANFORD L. KURLAND,
12             Defendants.
13
14
15 ARGENT CLASSIC CONVERTIBLE            Case No. CV-07-07097-MRP
16 ARBITRAGE FUND L.P., Individually and
17 On Behalf of All Others Similarly Situated,
18
19             Plaintiff,
20       v.
21 COUNTRYWIDE FINANCIAL
22 CORPORATION, ANGELO R. MOZILO,
23 DAVID SAMBOL, and ERIC P. SIERACKI,
24
25             Defendants.
26
27
28

-3-

1

2

3  BARRY BRAHN, Individually and on Behalf          Case No. CV-07-07259-MRP
   of Himself and All Others Similarly Situated,
4

5                                  Plaintiff,

6           v.

7  COUNTRYWIDE CAPITAL V.,

8  COUNTRYWIDE FINANCIAL

9  CORPORATION, ANGELO R. MOZILO,

10 ERIC P. SIERACKI, and STANFORD L.

11 KURLAND,

12                                 Defendants.

13

14

15

16                                     **I.**

17                             **INTRODUCTION**

18          Before the Court are six securities class action cases brought on behalf of investors of

19 Countrywide Financial Corporation ("Countrywide") and asserting claims against Countrywide,

20 its subsidiaries, a variety of current and former officers and directors, and underwriters of public

21 offerings of Countrywide securities.  Several Plaintiffs from these cases have moved to

22 consolidate some or all of the claims.  Further, multiple parties have filed motions to be

23 appointed as lead plaintiff of either a consolidated case or a case not treated as part of the

24 consolidated case.  The Court heard oral argument on the issues of consolidation and

25 appointment of lead plaintiff on November 19, 2007.

26

27

28

# II.

## BACKGROUND

### A.    Defendants in all cases

Countrywide is a Delaware corporation with its principal place of business in Calabasas, California.  With its subsidiaries, Countrywide operates in five business areas: Mortgage Banking, Banking, Capital Markets, Insurance, and Global Operations.  The Mortgage Banking component originates and sells residential loans, and the Global Operations component provides ancillary services for those loans.  The Banking component operates a federally chartered bank that invests in mortgages and home equity loans that originated in Mortgage Banking.  The Capital Markets component underwrites and trades in mortgage-backed securities.

One complaint, *Jack McBride, et al., v. Countrywide Financial Corp., et al.* ("*McBride*"), also includes as defendants Citigroup Global Markets, J.P. Morgan Securities, Merrill Lynch, Morgan Stanley, UBS Securities LLC, Wachovia Capital Markets LLC (collectively the "underwriters") as defendants.  These companies served as underwriters of a November 1, 2006 public stock offering.

Finally, several complaints name individual directors and officers of Countrywide or its subsidiaries as defendants.  Angelo Mozilo, one of the original founders of Countrywide in 1969, served as CEO and Chairman of the Board of Directors of Countrywide during the period in question.  Kathleen Brown, Henry Cisneros, Jeffrey Cunningham, Robert Donato, Michael Dougherty, Martin Malone, Robert Parry, Oscar Robertson, Keith Russell, and Harley Snyder were other members of the Board of Directors in late 2006.

Stanford Kurland is a former COO and President of Countrywide, and David Sambol currently holds those positions, as well as Chairman and CEO of CHL.  Eric Sieracki is Countrywide's Executive Managing Director and CFO.  Andrew Gissinger, III is Executive Managing Director of Residential Lending, and President and COO of CHL.  Carlos Garcia is Executive Managing Director of Banking and Insurance.

### B.    Individual cases

1. *Jack McBride, et al., v. Countrywide Financial Corp., et al.*, No. CV-07-06083-MRP and *Barry Brahn v. Countrywide Financial Corp., et al.*, No. CV-07-07259-MRP ("*Brahn*")

Plaintiff McBride alleges that Countrywide, its directors and officers, and its underwriters failed to craft a registration statement and prospectus for a Nov. 1, 2006 securities offering (collectively "Prospectus") that fully informed investors of "all material facts and industry trends" affecting Countrywide. Investors purchased Countrywide Capital V preferred stock ("preferred stock") in reliance on the misstatements and omissions in the Prospectus, and ultimately lost money when the stock decreased in value in mid-2007.

McBride sues on behalf of the class of all purchasers of preferred stock from the November 1, 2006 offering and purchasers traceable thereto. His action arises under § 11 and § 15 of the Securities Act of 1933 ("1933 Act"). 15 U.S.C. §§77k-l. Under these sections, where a registration statement or prospectus contains a misstatement of material fact or omission of material fact, any person acquiring the security may sue (1) every person who signed the registration statement, (2) every director and (3) every underwriter of that security, including the issuer. *Id.* The heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") do *not* apply to 1933 Act claims unless the complaint "sounds in fraud." *See Anderson v. Clow (In re Stac Elecs. Sec. Litig.),* 89 F.3d 1399, 1405 n.3 (9th Cir. 1996); *In re Portal Software*, No C-03-5138 VRW, 2006 U.S. Dist. LEXIS 61589, at *7 (N.D. Cal. Aug. 17, 2006).

The *Brahn* case is similar to McBride in that it asserts § 11 and § 15 of the 1933 Act based on the Prospectus associated with the Nov. 1, 2006 offering of preferred securities. It also asserts a violation of § 12(a)(2) of the 1933 Act, which creates liability for sellers of securities, against Countrywide Capital V.

2. *George Pappas v. Countrywide Financial Corp.*, et al., No. CV-07-05295-MRP ("*Pappas*")

Plaintiff Pappas alleges that Countrywide and its directors issued false and misleading statements during the class period of in violation of § 10(b) and § 20(a) of the Securities and Exchange Act of 1934 ("1934 Act") and SEC Rule 10b-5. The complaint references a series of press releases and public statements that contain the alleged misrepresentations and omissions. Pappas highlights the positive and optimistic statements contained in those press releases and characterizes them as misleading in light of the position of the Company. Pappas contends that the defendants should have disclosed some information about the risk of the impairment charge and loan loss provision that resulted in a surprise to investors on July 24, 2007.

Pappas pleads the reliance requirement of the relevant sections by alleging "fraud on the market" and alleges that the alleged misrepresentations and omissions resulted in purchasers of Countrywide public securities paying artificially inflated prices during the class period of Oct. 24, 2006 to Aug. 9, 2007.

> 3. *Norfolk County Retirement System, et al.*, v. *Countrywide Financial Corp.*, *et al.*, No. CV-07-05727-MRP ("*Norfolk*") and *Saratoga Advantage Trust*, *et al.*, *v. Countrywide Financial Corp.*, *et al*, No. CV-07-06635-MRP ("*Saratoga*")

Plaintiffs in these cases allege that during the class period Countrywide falsely represented that it had strict and selective underwriting and loan origination processes, and ample liquidity that would insulate the company in a market downturn. According to Plaintiffs, Countrywide and its executives repeatedly assured investors and the public that its disciplined and conservative strategy set it apart from other "irrational" mortgages lenders. These assurances came in the form of press releases, conference calls with investors where executives answered questions, SEC filings such as quarterly and annual reports, and presentations to investors. Plaintiffs allege that in fact Countrywide engaged in practices that limited the ability of the Company to weather any deterioration of the housing and mortgage markets.

As with *Pappas*, the Plaintiffs seek relief under the 1934 Act and SEC Rule 10b-5, and rely on the "fraud on the market" doctrine to show that purchasers of common stock in the period of April 24, 2004 to August 9, 2007 relied on the alleged misrepresentations by paying the inflated prices that resulted from them.

> 4. *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide, et al.*, No. CV-07-07097-MRP ("*Argent*")

Plaintiff Argent Classic Convertible Arbitrage Fund L.P. ("Argent") sues on behalf of itself and the class of qualified institutional buyers who purchased Countrywide Series A and Series B Floating Rate Convertible Senior Debentures due 2037 ("debentures") in a private placement pursuant to SEC Rule 144A during a class period of May 17, 2007 to August 9, 2007. Plaintiff alleges that Defendants made false and misleading statements in press releases, SEC filings, and other public statements that concealed the Company's financial condition. These misrepresentations inflated the price of Countrywide common stock, which in turn inflated the price of debentures because they are convertible to common stock. As in *Pappas, Norfolk,* and

*Saratoga,* the *Argent* action alleges violations of § 10(b) and § 20(a) the 1934 Act, and SEC Rule 10b-5. The complaint also alleges violations of several sections of the California Corporations Code.

### III.

#### CONSOLIDATION

**A. Legal Standard**

Under the PSLRA, the court must decide whether to consolidate claims before it appoints a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Federal Rule of Civil Procedure 42(a) ("Rule 42") grants the district court broad discretion to consolidate cases involving common issues of law or fact in the interests of judicial economy and convenience. *Huane v. United States,* 743 F.2d 703, 704 (9th Cir. 1984). The court must weigh the saving of time and effort consolidation would produce against any inconvenience, delay, or expense it would cause. *Id.*

Although district courts generally take a favorable view towards consolidation, the mere existence of a common issue should not lead to the conclusion that the district judge must order consolidation – to the contrary, a district judge "always has discretion to deny consolidation." 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2383.

In considering whether to consolidate securities class actions, courts have considered whether the actions involved the same "core of defendants," the same law under the various Securities Acts (and Rule 10b-5), and the same factual events. *See, e.g., Garber v. Juniper Networks, Inc.,* No. 06-04327 JW, 2006 U.S. Dist. LEXIS 86721 (N.D. Cal. Nov. 20, 2006); *Averdick v. Hutchinson Tech., Inc.,* No. 05-2095 MJD/SRN, 2006 U.S. Dist. LEXIS 47445 (D. Minn. Feb. 9, 2006); *Meeuwenberg v. Best Buy Co.,* No. 03-6193 ADM/AJB, 2004 U.S. Dist. LEXIS 7686 (D. Minn. Apr. 29, 2004).

Also instructive is *Aronson v. McKesson HBOC, Inc.,* in which a series of 54 securities fraud class actions were brought in the Northern District of California. 79 F. Supp. 2d 1146 (N.D. Cal. 1999). In that case, the court consolidated several cases even though some arose from 10b-5 and others from the Securities Act of 1933, and the cases involved overlapping, but different, sets of defendants and securities. *Id.* The court appointed a single lead plaintiff for all the class actions despite the differences in the cases. *Id.*

Other cases have held that a single lead plaintiff can represent a class of plaintiffs even if that party does not have standing to sue under all claims so long as one named plaintiff does have

standing.  *See, e.g., Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 669-70 (C.D. Cal. 2005); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 458 F. Supp. 2d 455, 462 (E.D. Mich. 2006).

Finally, in *In re Enron Corp. Securities Litigation*, 206 F.R.D. 427, 438 (S.D. Tex. 2002), the district court consolidated a preferred stock claim with a common stock claim, noting that objections to consolidation because of distinct issues surrounding preferred stock can effectively be handled by dividing the class during class certification.  *Id.*

## B. Arguments

Plaintiff New York Funds[1] seeks to consolidate all claims primarily because the actions involve numerous common questions of law and fact, and because splintering the litigation could interfere with the ability of a lead plaintiff to run the litigation smoothly.  Plaintiff Brahn supports consolidation of the preferred stock claims with the other public securities claims, and supports appointment of New York Funds as lead plaintiff for the consolidated class.

Plaintiff McBride opposes grouping the preferred stock claims with common stock or private placement securities because they are subject to a different pleading standard.  In addition, New York Funds has not suggested that it holds any preferred stock, which raises questions about its ability to represent the preferred stock purchasers fairly.

Plaintiff Argent Classic Convertible Fund L.P. ("Argent") opposes grouping the claims involving private debentures with claims involving publicly traded securities primarily because the debentures were offered *only* to "qualified institutional buyers," which by definition cannot include pension funds such as those comprising the New York Funds conglomerate.  The private debentures, according to Argent, raise factual and legal distinctions not at issue in any of the other cases and demands separate treatment from those cases.

## C. Analysis

Resolving the question of consolidation requires a close examination at the similarities and differences in the cases before the court, and grouping cases together only when satisfied that the requirements of Rule 42 are met.  Some of the cases are so similar that they can be consolidated without further discussion.  The *Brahn* case and *McBride* case involve identical

---

[1] "New York Funds" refers to Thomas P. DiNapoli, Comptroller of the State of New York, as Administrative Head of the New York State and Local Retirement Systems, and as Trustee of the New York State Common Retirement Fund, and of the New York City Pension Funds.

-9-

securities (preferred stock) and an identical class (purchasers who can trace their purchase to the Nov. 1, 2006 offering), and both allege violations of nearly identical sections of law (§ 11, § 12(a) and § 15 of the 1933 Act) based on the same statements (the Prospectus). Thus, they are ordered grouped together. Likewise, *Norfolk* and *Saratoga* both allege violations of § 10(b), § 20(a) and SEC Rule 10b-5 and contemplate a class of public stock purchasers dating back to April 24, 2004. Indeed, the complaints in the two cases are identical in parts of their allegations. Therefore, they too are ordered to be grouped together.

### 1. *Pappas* and *Norfolk/Saratoga*

The Court next determines whether to group the *Pappas* claims with *Norfolk/Saratoga*. These three, the broadest complaints, allege violations of the same sections of law, and cite essentially the same public statements made by Countrywide in the period of October 2006 to November 2007 as being materially misleading. The difference is the starting date of the class period (April 2004 in *Norfolk/Saratoga* compared to October 2006 in *Pappas*), and the precise definition of the class (common stock purchasers in *Norfolk* compared to public securities purchasers in Pappas). At least in the period of October 2006 to the end of the class period in August 2007, the Court expects very similar theories and evidence to be presented. The overlap is sufficient to support consolidation to effectuate case management and discovery, and no party opposes this conclusion for these cases. Accordingly, the *Pappas*, *Norfolk*, and *Saratoga* claims are ordered consolidated.

### 2. *McBride/Brahn* and *Pappas/Norfolk/Saratoga*

The parties vigorously contest whether the preferred stock claims from *McBride/Brahn* should be grouped with the common stock claims from the other cases. The Court acknowledges that there are several important differences between the cases. For example, the preferred stock claims in *McBride/Brahn* do not face the heightened pleading requirements of the PSLRA unless they "sound in fraud" and do not require proof of scienter. Moreover, the claims involve a narrower class because they deal solely with purchasers from a particular public offering, and include several underwriters that are not involved in any other case.

However, the similarities between the claims compel the Court to consolidate them, at least at this stage. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. at 451 (explaining that "consolidation, at least pretrial, serves to promote an orderly progression of this very complex

-10-

litigation, especially since discovery necessarily involves overlapping Defendants and a common core of facts and legal issues"). From a factual perspective, the claims concern overlapping public statements: the Prospectus is one document that the 1934 Act claimants could very well include in their case. Indeed, the *Pappas* complaint is brought "on behalf of all persons who purchased Countrywide Financial *publicly traded securities* on the open market during the Class Period," a definition which includes both preferred and common stock.[2] Thus, *Pappas* arguably contemplates the Prospectus as one public statement that violates the 1934 Act with respect to preferred stock. Moreover, the class periods in all the public securities cases overlap significantly: their end date of Aug. 9, 2007 is identical, and their start date varies from late 2006 to early 2004.

The different pleading standards and evidentiary burdens in a 1933 Act claim are not so difficult to manage that multiple lead plaintiffs of distinct classes are necessary at this stage. "Speculations about possible conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories." *Aronson v. McKesson HBOC, Inc.,* 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999). The Court is not persuaded by the speculative arguments made by McBride that combining fraud claims with 1933 Act claims will delay and prejudice the claimants.[3] A single lead plaintiff, with adequate counsel, could very easily manage both types of claims, particularly given the overlap in facts, defendants, and time periods at issue, and because the requirements for each cause of action are well-established.

At this time, the Court is satisfied that economy and efficiency would be promoted by having a single lead plaintiff bring all claims involving publicly traded securities, whether they arise under the 1933 Act or 1934 Act, and whether they concern common or preferred stock. For these reasons, the Court consolidates claims involving purchases of public securities under a single lead plaintiff.

---

[2] New York Funds mentions that it intends to amend its complaint to include all securities, public and private. It may further bring claims under § 11 for other securities that it holds. The Court, however, will only decide the issues of consolidation and lead plaintiff with the motions and complaints it has before it at this time.

-11-

3. *Argent* and the other cases

The Court has good reason to consolidate *Argent* and to treat it separately with a separate lead plaintiff.  As has been well briefed by New York Funds, Plaintiff Argent offers two seemingly inconsistent perspectives on the litigation.  On the one hand, Argent's SUPPLEMENTAL STATEMENT REGARDING LEAD PLAINTIFF MOTIONS asserts that the fact that private debentures are involved <u>requires</u> that the case be kept separate because there are <u>no common questions of law or fact</u>.  Argent states that the debentures are "fundamentally different" types of securities with "different characteristics", which makes it clear "none of the plaintiffs or movants can adequately represent the *unique* interests of the Debenture class."  ARGENT'S SUPPLEMENTAL STATEMENT REGARDING LEAD PLAINTIFF MOTIONS, at 6-8 (emphasis added).

On the other hand, Argent's complaint alleges "fraud on the market" under § 10(b), § 20(a), and Rule 10b-5 and discusses extensively the effect of the misrepresentations on the price of the common stock.  *See* Argent's CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND CALIFORNIA STATE LAW ("Argent Complaint"). Factually and legally this is nearly identical to *Pappas*, *Norfolk*, and *Saratoga*, at least during the short *Argent* class period of May 24, 2007 to August 9, 2007.  The only additional wrinkle is the contention that the price of the debentures is tied to the common stock due to the convertible nature of the private debentures.  In this regard, the Court observes that the *Argent* complaint raises several common questions of *both* law and fact with the other 1934 Act cases, meeting the Rule 42 threshold for consolidation.

Nonetheless, the Court exercises its discretion to separate the *Argent* case under a distinct lead plaintiff because, as has become evident in the briefs and at oral argument, there are important and complex legal and factual issues which are unique to the private placement scenario, and there is reason to believe these issues could be lost in the fray of the public securities litigation.  Plaintiff Argent makes an unusual legal argument that "fraud on the market" is available to prove reliance in a SEC Rule 144A private placement case, and in the alternative, that a private placement memorandum issued to qualified institutional investors can support common law reliance.  Whether these arguments have merit depends on facts and law not involved in any other case, and concerns only qualified institutional investors who traded in a private market.  Class certification for the *Argent* class may hinge on these issues in the private placement case, whereas in the public securities fraud cases, "fraud on the market" is largely straightforward if the securities trade on national exchanges.  Moreover, of less importance in the

-12-

*Argent* case are the voluminous facts and legal analysis relevant to the class period of 1-3 years asserted by the other cases because the class start date of May 24, 2007 is so very recent.

Thus, although there is some overlap in facts and law with the public securities claims, the Court anticipates at the outset that the focus of the private placement claims will be different from the public securities claims, and the difference is sufficient to merit separation for case management purposes. The Court is convinced that in the *Argent* case a lead plaintiff should be appointed who is a qualified institutional investor so that this focus is not lost by a lead plaintiff coordinating claims involving both public and private securities and markets. The coordination of discovery can be managed by later orders of the Court.

### 4. Conclusion

For the foregoing reasons, the Court consolidates the *McBride, Brahn, Pappas, Norfolk,* and *Saratoga* cases ("Public securities cases"), but orders that the *Argent* case remain separate.

### IV.

### APPOINTMENT OF LEAD PLAINTIFF

**A. Legal Standard**

The PSLRA provides a three-step process for identifying the lead plaintiff in securities cases. *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The first step requires that the plaintiff who files the initial action must publish, "in a widely circulated national business-oriented publication or wire service," notice of the pendency of the action and a statement that "any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(A). Movants have 60 days from when notice is published to provide their motions to the court. 15 U.S.C. § 78u-4(a)(3)(A)(II).

Once notice is established, the district court must select the "presumptively most adequate plaintiff" by identifying the movant that has shown "the largest financial interest in the relief sought by the class" and that it satisfies the adequacy and typicality requirements of Rule 23(a) of the Federal Rules of Civil Procedure ("Rule 23"). *In re Cavanaugh*, 306 F.3d at 729-30.

In the third step, other plaintiffs have the opportunity to rebut the presumptive lead plaintiff's showing of typicality and adequacy. *Id.* at 730. The Court must examine potential lead plaintiffs one at a time, starting with the one with the greatest financial interest, and

continuing in descending order "if and only if the presumptive lead plaintiff is found inadequate or atypical [under Rule 23 standards]." *Id.* at 732.

### 1. Largest Financial Interest

Courts typically look to four factors as being determinative of the "largest financial interest": (1) the numbers of shares of the subject securities purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *Lax v. First Merch. Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *5 (N.D. Ill. Aug 11, 1997); *In re Cendant*, 264 F.3d 201, 262 (3d. Cir. 2001) (citing with approval the Lax court and others that utilized these factors). While these factors are widely recognized by the courts, the Ninth Circuit does not require them; it demands only that district courts select "accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4.

### 2. LIFO vs. FIFO

The two most common accounting techniques in calculating losses suffered by plaintiffs are FIFO and LIFO. FIFO stands for "first-in, first-out"; LIFO stands for "last-in, first-out." *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). They represent different methods for matching specific sales of stock with specific purchases. *See generally Johnson v. Dana Corp.*, 236 F.R.D. 349, 352 (N.D. Ohio 2006) (explaining the FIFO and LIFO concepts in the approximate losses context). The choice of which accounting methodology applies is a question of law. *Arenson v. Broadcom Corp.* No. CV-02-301-GLT, 2004 U.S. Dist. LEXIS 27522 (C.D. Cal. Dec. 6, 2004) (citing *Crow Tribe v. Racicot*, 87 F.3d 1039, 1045 (9th Cir.1996)).

While the New York Funds characterize FIFO as the "predominant" method of matching purchases and sales, it appears that district courts have "generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases." *eSpeed*, 232 F.R.D. at 101 (citing *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 378-79 (E.D. Va. 2003)) (emphasis added). *See also Arenson*, 2004 U.S. Dist. LEXIS, at *5-7. FIFO is disfavored because it "encompasses purchases made outside the class period," *Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at *26 (N.D. Cal. Aug. 19, 2002), and thus in

-14-

some cases "will identify damages where in reality there is none." *In re Clearly Canadian Sec. Litig.*, No. C-93-1037-VRW, 1999 U.S. Dist. LEXIS 14273, at *13 (N.D.Cal. Sep. 3, 1999).

### 3. Rule 23 Requirements

As noted above, a movant must also satisfy the requirements of Rule 23 in order to invoke the presumption of being the "most adequate" plaintiff. In particular, the potential lead plaintiff must make a prima facie showing of the "typicality" and "adequacy" requirements of Rule 23 class certification. *In re Cavanaugh*, 306 F.3d at 730. "Numerosity" and "commonality" need not be shown because they are class requirements more properly directed towards the class as a whole. *Id.* at 730 n.5 (noting that the absence of this factor "would preclude certifying a class action at all"). The district court has latitude as to what information it will consider in determining typicality and adequacy. *Id.* at 732. In making these determinations, the Court reviews the plaintiffs' pleadings and declarations, *id.* at 730, and applies established Rule 23 principles. *In re Cendant*, 264 F.3d at 264-265.

#### a. Typicality

The court assesses typicality by determining whether "the circumstances of the movant ... are markedly different or the legal theory upon which the claims [of that movant] are based differ from the theories of the claims of the other class members." *In re Cendant*, 264 F.3d at 265 (internal quotations omitted). *See also* (a)(3)(B)(iii)(II)(bb) (allowing statutory presumption to be rebutted where the presumptively most adequate plaintiff is "subject to unique defenses that render such plaintiff incapable of adequarely representing the class").

#### b. Adequacy

In determining adequacy, the court must consider whether the movant has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class. *In re Cendant*, 264 F.3d at 265.

## B. Arguments

Remaining before the Court are several motions for appointment as lead plaintiff. Plaintiff New York Funds seeks to be appointed as lead plaintiff of the consolidated case.

-15-

Saratoga Advantage Trust contends that it should be appointed as co-lead plaintiff with New York Funds, though it concedes that New York Funds' losses "far exceed" their own in this matter.

Plaintiff McBride seeks appointment as lead plaintiff for claims involving preferred stock purchasers, and Argent seeks appointment as lead plaintiff for claims involving purchasers of the private debentures at issue in that case.

### C.    Analysis

#### 1.  Notice

The movants expend significant energy debating the time-bar effect of the various public notices provided by plaintiffs and others in the several cases.  The court declines to rule on these issues, except to find that the Aug. 14, 2007 notice published by Scott and Scott LLP in *Prime Newswire* and the Sept. 20, 2007 notice published by Wolf Hadenstein Adler Freeman & Herz LLP in *Business Wire* meet the requirements of the PSLRA in announcing the pendency of the public securities cases.  The notices were published in widely-distributed news services and properly inform class members of their right to move for appointment as lead plaintiff.

Further, the notices that were filed do not explicitly or implicitly cover private placement securities as are at issue in *Argent* and therefore do not bar Argent's later filed motion for appointment as lead plaintiff.  Argent's counsel provided notice of the pendency of the *Argent* action pursuant to the PSLRA in *Business Wire* on Oct. 31, 2007.  The notice adequately informed debenture purchasers of their right to file motion for appointment as lead plaintiff. Thus, the notice requirement of the PSLRA is met for Argent as well.

#### 2.  The *Argent* Case

Because the time period for movants to file motions for appointment as lead plaintiff has not yet expired, the Court declines to appoint a lead plaintiff for the *Argent* case at this time.

#### 3.  The Public Securities Cases

New York Funds, with a LIFO loss of over $40 million and a FIFO loss of over $100 million, clearly has the largest financial stake of any movant in the consolidated case under the four factors used by the Third Circuit, and likely under any other rational accounting method.

-16-

New York Funds also has made a prima facie showing of typicality and adequacy. Typical of plaintiffs in all the cases, New York Funds purchased public securities in Countrywide at prices it alleges were inflated by false and misleading statements by defendants, and damages were incurred by alleged violations of federal securities laws.

The party meets the adequacy requirement as well. As a group of large institutional investors who have conducted numerous large securities actions, New York Funds has considerable experience in such cases, and has retained competent counsel also with the necessary experience. The Court accepts the party's statement that it intends to vigorously protect the interests of all plaintiffs. Accordingly, New York Funds is the presumptive lead plaintiff of the consolidated case.

As discussed in Section III, McBride challenges the typicality and adequacy of New York Funds as a lead plaintiff of the preferred stock claims because New York Funds does not purport to hold preferred stock. Here, the preferred stock claims under the 1933 Act are sufficiently similar to the allegations in other cases to convince the Court that New York Funds allegations *are* typical of the cases. The typicality requirement is satisfied when the plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other members and is based on the same legal theory, *In re Enron Corp., Securities Litigation*, 206 F.R.D. at 445 (internal citations omitted), and the striking similarity in allegations is evident here despite the different causes of action and securities involved. *See, e.g.,* Declaration of Russel N. Jacobson in Support of New York Funds' Reply Memorandum of Points And Authorities, Ex. H (chart comparing the similarity of the *Norfolk* and *McBride* complaints, including the use of identical language to describe how Countrywide misled investors).

Moreover, McBride's argument that the common stockholders "*cannot* be adequate plaintiffs because they have no financial interest in the relief sought by the class" is without merit. That New York Funds has not purchased preferred stock does not bar consolidation nor does it bar their appointment as lead plaintiff for all claims involving public securities. *See Tanne v. Autobytel*, 226 F.R.D. 659, 669 (C.D. Cal. 2005). It is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim. *Id.* The Court is persuaded that a single, large, institutional investor in public Countrywide securities can quite fairly handle claims under the different causes of action that may be asserted by the various plaintiffs such as McBride and Brahn.

-17-

Saratoga Advantage Trust has submitted a brief arguing that it should be appointed co-lead plaintiff with New York Funds because the New York Funds is a "single aggregation of politically influenced parties" and Saratoga would serve as a balance in the leadership and a "check" of the litigation process. Under the case law, there is no question that the Court has the authority to appoint co-lead plaintiffs where such appointment "will enhance, rather than reduce, the efficiency of the litigation." *In re. Amer. Bus. Fin. Serv. Cit.*, No. 04-0265, 2004 U.S. Dist. LEXIS 10200 (E.D. Pa Jun. 3, 2004). In the situation here, there is also no question that New York Funds is a grouping of <u>public</u> pension funds. However, Saratoga Advantage Trust is merely speculating and has not shown that these vague "political" considerations will have any impact whatsoever on New York Funds ability to represent the Plaintiffs as lead on its own. In fact, New York Funds has done so in prior cases with considerable success. Absent a more fact-based or specific attack on New York Funds ability to represent the class as a sole lead plaintiff, the motion to appoint Saratoga Advantage Trust as co-lead plaintiff is denied.

## V.

### APPOINTMENT OF LEAD COUNSEL

Once chosen, the lead plaintiff is responsible for choosing the lead counsel in the case. *See* 15 U.S.C. §78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). The lead plaintiff's discretion is not absolute, because the court retains the power and the duty to supervise this process. *In re Cendant,* 264 F.3d at 273. However, the court's role is confined to deciding whether to approve the choice of the lead plaintiff. *Id.*

Here, the Court approves New York Funds' choice of Labaton Sucharow LLP as counsel. The firm has extensive experience in large securities fraud cases and in particular, in managing class actions involving public securities purchasers. At this time, the Court is confident that counsel will be able to properly represent the plaintiffs in the consolidated case.

## VI.

### CONCLUSION

In accordance with this Order, New York Funds and its counsel of Labaton Sucharow LLP is appointed lead plaintiff and lead counsel, respectively, for a consolidated case comprising

-18-

the claims in *Pappas*, *Norfolk*, *Saratoga*, *McBride*, and *Brahn*.  All subsequent filings in any of these five cases should reflect the case number CV-07-05295-MRP.

IT IS SO ORDERED.

DATED:  November 28, 2007

_____

Hon. Mariana R. Pfaelzer
United States District Judge

# EXHIBIT B

# MERRILL LYNCH & CO INC

## FORM S-4
(Securities Registration: Business Combination)

## Filed 05/08/07

| | |
|---|---|
| Address | 4 WORLD FINANCIAL CTR |
| | NEW YORK, NY 10080 |
| Telephone | 2124491000 |
| CIK | 0000065100 |
| Symbol | MER |
| SIC Code | 6211 - Security Brokers, Dealers, and Flotation Companies |
| Industry | Investment Services |
| Sector | Technology |
| Fiscal Year | 12/28 |

http://access.edgar-online.com
© Copyright 2008, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

Registration No. 333-[ • ]

**As filed with the Securities and Exchange Commission on May 7, 2007**

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## Form S-4
### REGISTRATION STATEMENT
### UNDER
### THE SECURITIES ACT OF 1933

# MERRILL LYNCH & CO., INC.
*(Exact Name of Registrant as Specified in Its Charter)*

| Delaware | 6211 | 13-2740599 |
|---|---|---|
| *(State or Other Jurisdiction of Incorporation or Organization)* | *(Primary Standard Industrial Classification Code Number)* | *(IRS Employer Identification Number)* |

**4 World Financial Center**
**New York, New York 10080**
**(212) 449-1000**
*(Address, Including Zip Code, and Telephone Number, Including Area Code, of Registrant's Principal Executive Offices)*

**Richard Alsop, Esq.**
**General Counsel Corporate Law**
**Merrill Lynch & Co., Inc.**
**222 Broadway — 17th Floor**
**New York, New York 10038**
**(212) 449-1000**
*(Name, Address, Including Zip Code, and Telephone Number, Including Area Code, of Agent for Service)*

### *Copies to:*

| Edward J. Dobranski, Esq. | Mitchell S. Eitel, Esq. | John M. Reiss, Esq. |
|---|---|---|
| General Counsel | Sullivan & Cromwell LLP | Laura Sizemore, Esq. |
| First Republic Bank | 125 Broad Street | White & Case LLP |
| 111 Pine Street, 2nd Floor | New York, New York 10004 | 1155 Avenue of the Americas |
| San Francisco, California 94111 | (212) 558-4000 | New York, New York 10036 |
| (415) 392-1400 | | (212) 819-8200 |

**APPROXIMATE DATE OF COMMENCEMENT OF THE PROPOSED SALE OF THE SECURITIES TO THE PUBLIC:** As soon as practicable after this Registration Statement becomes effective and upon completion of the transaction described in the enclosed proxy statement/prospectus.

If the securities being registered on this Form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act of 1933, as amended ("Securities Act"), check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

### CALCULATION OF REGISTRATION FEE

| Title of Each Class of Securities to be Registered | Amount to be Registered | Proposed Maximum Offering Price per Share | Proposed Maximum Aggregate Offering Price | Amount of Registration Fee |
|---|---|---|---|---|
| Common Stock, par value $1.33 $^1/_3$ per share (including preferred share purchase rights)(1) | 12,000,000 shares(2) | N/A | $895,559,426(3) | $27,493.67(4) |
| Preferred Stock, par value $1.00 per share | 115,000 shares(5) | N/A | $115,000,000(6) | $3,530.50(4) |

(1) Prior to the occurrence of certain events, the preferred share purchase rights will not be evidenced separately from the Common Stock. The value attributable to such rights, if any, is reflected in the market price of the Common Stock.

(2) Represents the maximum number of shares of common stock of the registrant, Merrill Lynch & Co., Inc., estimated to be deliverable upon completion of the merger of First Republic Bank with and into Merrill Lynch Bank & Trust Co., FSB, a wholly owned subsidiary of the registrant.

(3) Estimated solely for the purpose of calculating the registration fee required by Section 6(b) of the Securities Act and calculated in accordance with Rules 457 (c), (f)(1) and (f)(3) under the Securities Act. The proposed maximum aggregate offering price of the registrant's common stock was calculated based upon the market value of shares of First Republic Bank common stock in accordance with Rule 457(c) under the Securities Act as follows: (A) the product of (1) $54.23, the average of the high and low prices of First Republic Bank common stock as reported on the New York Stock Exchange on May 4, 2007 and (2) 33,028,192, the maximum number of shares of First Republic Bank common stock expected to be exchanged in connection with the merger (which is the sum of (x) 31,151,848 issued and outstanding shares of First Republic Bank common stock and (y) 1,876,344 shares of First Republic Bank common stock issuable under various plans and options, as of April 30, 2007), less (B) $895,559,426, the estimated cash portion of the consideration to be paid by the registrant in exchange for shares of First Republic Bank common stock.

(4) Determined in accordance with Section 6(b) of the Securities Act at a rate equal to $30.70 per $1,000,000 of the proposed maximum aggregate offering price.

(5) Represents the maximum number of shares of preferred stock of the registrant, Merrill Lynch & Co., Inc., estimated to be deliverable upon completion of the

merger of First Republic Bank with and into a wholly owned subsidiary of registrant.

(6)    Estimated solely for the purpose of calculating the registration fee required by Section 6(b) of the Securities Act and calculated in accordance with Rule 457 (f)(2) under the Securities Act. The proposed maximum aggregate offering price of the registrant's preferred stock was calculated based upon book value per share of First Republic preferred stock as of May 4, 2007.

---

    **The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this Registration Statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act or until the Registration Statement shall become effective on such date as the Securities and Exchange Commission, acting pursuant to said Section 8(a), may determine.**

Table of Contents

*Benefits.*   Under the retention agreements, Mr. Herbert and Ms. August-deWilde are entitled to receive all standard health and welfare benefits and other benefits and perquisites available to similarly situated Merrill Lynch senior executives, as well other incidental benefits such as paid vacation, use of company cars and up to 465 hours per year of aircraft travel for business purposes. Merrill Lynch has also agreed to honor existing supplemental executive retirement and endorsement method split-dollar agreements to which Mr. Herbert and Ms. August-deWilde are a party as of the completion of the merger.

*Gross Up Payments.*   The retention agreements also provide for a "gross up" payment to Mr. Herbert and Ms. August-deWilde if any payment or distribution by Merrill Lynch or its affiliates in connection with the merger would be subject to the excise tax imposed by Section 4999 of the Internal Revenue Code. Specifically, in the event an excise tax is incurred, Merrill Lynch will pay the executive an additional payment in an amount such that, after payment by the executive of all taxes (including income and excise taxes imposed on such additional payment), the additional payment to the executive will be equal to the excise tax imposed on payments to the executive in connection with the merger. However, if payments to the executive in connection with the merger would result in imposition of an excise tax, but reducing such payment by up to 5% would result in no excise tax being imposed, Merrill Lynch may reduce such payment.

### Stock Options

Employees, including officers, of First Republic have received, from time to time, grants of stock options and deferred equity units under applicable equity compensation plans of their employer.

The merger agreement provides that all options on First Republic stock will be converted into options on Merrill Lynch common stock or, with respect to options held by individuals who are not employees of First Republic when the merger closes, converted into the right to receive cash consideration. Individuals who will receive cash, rather than options on Merrill Lynch common stock, in exchange for their options on First Republic common stock include certain non-employee directors of First Republic. We expect that these directors will receive cash payments upon completion of the merger in respect of their options on First Republic common stock as follows:

| Name | First Republic Options Held | Average Weighted Exercise Price | Expected Cash Payment |
|---|---|---|---|
| Roger O. Walther | 44,379 | $ 10.73 | $ 1,964,650 |
| Frank J. Fahrenkopf, Jr. | 33,063 | $ 10.63 | $ 1,467,000 |
| James P. Conn | 40,280 | $ 10.70 | $ 1,784,400 |
| L. Martin Gibbs | 19,125 | $ 10.33 | $ 854,300 |
| Thomas J. Barrack, Jr. | 12,750 | $ 13.52 | $ 528,800 |

For additional information on the treatment of First Republic's equity compensation awards, please see the section entitled "The Merger Agreement — Treatment of Stock Options and Other Equity Awards" beginning on page 61.

### Retention Bonus Plan

Merrill Lynch will make available to the First Republic Bank Division of ML Bank shares of Merrill Lynch common stock, which shares of Merrill Lynch common stock will be available for grant, in the form of restricted stock, to officers and employees of First Republic (other than First Republic Bank Division's Chief Executive Officer and Chief Operating Officer). The management of the First Republic Bank Division will have the right to determine, in consultation with Merrill Lynch's management, the terms and conditions of such restricted stock awards, including the recipients, the number of shares granted to each recipient and the vesting conditions associated with each grant.

### Indemnification and Insurance

Following completion of the merger, Merrill Lynch will indemnify and hold harmless the directors and officers of First Republic for all actions taken or omissions by them prior to completion of the merger to the

# EXHIBIT C





ANNUAL REPORT 2006

**CORPORATE DIRECTORS AND EXECUTIVE OFFICERS**



Roger O. Walther | Thomas Barrack | Pamela Baldwin | James Herbert | Roger Walther | Katherine Auguste-deWilde | Maria Gibbs | Katherine Auguste-deWilde | Frank Fahrenkopf | Mario Gibbs | James Cahn | Jody Lindell | James Bronkema | Charles Moore | George Parker

RUFER O. WALTHER
71, *Founding Chairman of the Board of Directors*
Mr. Walther is Chairman of Tusker Corporation. He was Chairman of the Corporate management company. He is a director of The Charles Schwab Corporation, a director of the Schwab Funds Directors, and a director of the UCSF Foundation. He was formerly Founding Chairman of San Francisco Bancorp. B.A., 1958, United States Coast Guard Academy; M.B.A., 1961, Wharton School, University of Pennsylvania.

JAMES H. HERBERT, II
62, *Founding President, Chief Executive Officer and Director*
From 1980 to June 1986, Mr. Herbert was Founding President, Chief Executive Officer and a director of San Francisco Bancorp. Mr. Herbert is Co-Chair of the San Francisco Ballet Association, a trustee of the Joyce Theater Association, a director of the National Foundation for Teaching Entrepreneurship (Northern California), a member of Stanford's Board of Overseers and a director of The BASIC Fund. B.S., 1966, Babson College; M.B.A., 1969, New York University; President's Leadership Program, 2001, Harvard Business School.

KATHERINE AUGUST-deWILDE
59, *Executive Vice President, Chief Operating Officer and Director*
Ms. August-deWilde has been a Bank executive since 1985. Previously, she was Senior Vice President and Chief Financial Officer at PMI Group. She is a member of the Advisory Board at PMI Group, the Board of Business Advisory Council. A.B., 1969, Goucher College; M.B.A., 1976, Stanford University.

JAMES J. BAUMBERGER
64, *Senior Consultant and Director*
Mr. Baumberger was Executive Vice President of the Bank from 1993 to 2002. Previously, he served as President and Director of both First Republic Savings Bank and First Republic Mortgage Inc.

EDWARD J. DOBRANSKI
56, *Executive Vice President, Secretary and General Counsel since 1992*
Mr. Dobranski has practiced banking, real estate and corporate law for over 20 years in various positions held with the federal government. In private practice and as corporate counsel. B.A., 1972, Coe College; J.D., 1975, Creighton University.

DAVID B. LICHTMAN
43, *Executive Vice President and Chief Credit Officer*
Mr. Lichtman has held the Senior Credit Officer position since 1995 and has held positions in all phases of lending operations since he joined the Bank in 1986. B.A., 1985, Vassar College; M.B.A., 1990, University of California, Berkeley.

CHARLES V. MOORE
67, *Chairman Emeritus, Tusker Wardlaw and Director*
Since 1971, Mr. Moore has been an executive at Tusker, Wardlaw & Company, Incorporated, investment advisors. B.A., 1961, University of Virginia; L.L.B., 1964, Vanderbilt University Law School; M.B.A., 1968, Wharton Business School.

WILLIS H. NEWTON, JR.
57, *Executive Vice President and Chief Financial Officer since 1995*
Formerly, Mr. Newton was Vice President and Controller of Homestead Financial. B.A., 1971, Dartmouth College; M.B.A., 1976, Stanford University; Certified Public Accountant.

THOMAS J. BARRACK, JR.
60, *Director*
Mr. Barrack is Founder, Chairman and Chief Executive Officer of Colony Capital LLC, an international real estate investment and management firm. He is a director of Continental Airlines, Inc. and Accor Hotel Group. B.A., 1969, and J.D., 1972, University of Southern California.

JAMES P. CAHN
63, *Director*
Mr. Cahn was formerly Chief Investment Officer of Financial Security Assurance, Inc. and Transamerica, Inc. He is a director of Gabelli Dividend and Income Trust, Gabelli Equity Trust, Gabelli Utility Trust, Gabelli Global Multimedia Trust, Gabelli Global Gold, Natural Resources and Income Trust, and Gabelli Global Utility and Income Trust. B.S., 1959, Santa Clara University.

FRANK J. FAHRENKOPF, JR.
67, *Director*
Mr. Fahrenkopf is President and CEO of the American Gaming Association. He is of counsel in the Washington, D.C. law firm of Hogan and Hartson. From 1983 to 1989, he was Chairman of the Republican National Committee. He is a director of Gabelli Dividend and Income Trust, Gabelli Equity Trust, Gabelli Utility Trust, Gabelli Global Multimedia Trust, and Gabelli Global Natural Resources and Income Trust. B.A., 1962, University of Nevada, Reno; L.L.B., 1965, University of California, Berkeley.

GEORGE C. C. PARKER
68, *Director*
Mr. Parker is the Dean Witter Distinguished Professor of Finance, Emeritus and formerly Senior Associate Dean for Academic Affairs and Director of the MBA Program at the Graduate School of Business, Stanford University. He is a director of Continental Airlines, Inc., iShares Mutual Funds, Tejon Ranch Company and Threshold Pharmaceuticals. B.A., 1960, Haverford College; M.B.A. and Ph.D., 1967, Stanford University.

L. MARTIN GIBBS
68, *Director*
Effective January 1, 2005, Mr. Gibbs became a partner in the law firm of White & Case LLP, counsel to the Bank. Previously, he was a partner in the law firm of Clifford Chance, LLP, prior counsel to the Bank. B.A., 1959, Brown University; J.D., 1962, Columbia University.

PAMELA J. JOYNER
48, *Director*
Ms. Joyner is a Founding Partner of Avid Partners L.L.C., strategic marketing consultant to alternative investment managers. Previously, Ms. Joyner led units at Bowman Capital Management, L.L.C. and was a senior executive at Capital Guardian Trust Company. She is a former trustee at Dartmouth College, a Co-Chair of the San Francisco Ballet Association and a trustee of the California HealthCare Foundation. B.A., 1980, Dartmouth College; M.B.A., 1984, Harvard University; M.A. Honorary Degree, 2001, Dartmouth College.

JODY S. LINDELL
55, *Director*
Ms. Lindell is President and CEO of S.G. Management Inc., an asset management company. She is a director of The Cooper Companies. Until May 2000, Ms. Lindell was a partner with KPMG LLP. B.A., 1973, and M.B.A., 1975, Stanford University; Certified Public Accountant.

JAMES F. JOY (1917–2006)
*In Memoriam*
We lost a great friend and Board member this year. Jim Joy served on the Board of First Republic from its inception through 2005. He was also previously a founding Director of San Francisco Bancorp, a predecessor bank. Jim was an extraordinary representative for shareholders, always a valued advisor, a true gentleman and a wonderful friend. He was with us from the beginning and contributed significantly to our success.

**REGIONAL AND EXECUTIVE MANAGING DIRECTORS**

GABRIELLE CASTILLO-FRANCESCHI
*Executive Managing Director*
San Francisco

MARI DIEDERICH
*Regional Managing Director*
Los Angeles

WILLIAM G. DRESSOFF
*Regional Managing Director*
New York

SCOTT J. DUFRESNE
*Executive Managing Director*
Boston

JULIE B. HARKINS
*Executive Managing Director*
San Francisco

MARY KANABIS
*Regional Managing Director*
Silicon Valley

TOM MANTOR
*Regional Managing Director*
San Francisco East Bay

DYANNE E. TARTERSFIELD
*Executive Managing Director*
San Francisco

ELISE C. WISE
*Regional Managing Director*
San Francisco