UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DAVID EIDMAN,                                        :

                                  Plaintiff,         :        08 Civ. 03392 (LBS)

              -against-                              :

ERNEST STANLEY O'NEAL, et al.                        :

                                  Defendants.        :
-------------------------------------------------------------x
In re: MERRILL LYNCH & CO., INC.,                    :        07 Civ. 9633 (LBS)
        Securities, Derivative & ERISA Litigation    :
-------------------------------------------------------------x

## DECLARATION OF EDWARD Y. KROUB IN SUPPORT OF PLAINTIFF EIDMAN'S MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR RULING ON PLAINTIFF'S MOTION TO REMAND THE ACTION TO THE NEW JERSEY SUPERIOR COURT PURSUANT TO 28 U.S.C. § 1447(C)

EDWARD Y. KROUB, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.     I, Edward Y. Kroub, am an associate at the law firm of Horwitz, Horwitz & Paradis, Attorneys at Law, co-counsel for plaintiff David Eidman ("Plaintiff") in the captioned action. I submit this declaration in support of Plaintiff's Memorandum of Law in Support of Request for Ruling on Plaintiff's Motion to Remand the Action to the New Jersey Superior Court Pursuant to 28 U.S.C. § 1447(c). I am admitted in the United States District Court, Southern District of New York.

2.     Annexed hereto as Exhibit A is a true and correct copy of the Amended Verified Derivative Complaint filed by Plaintiff on December 4, 2007 in New Jersey Superior Court, Bergen County.

3.      Annexed hereto as Exhibit B is a true and correct copy of Plaintiff's Motion to Remand filed on January 23, 2008 in the New Jersey District Court.

4.      Annexed hereto as Exhibit C is a true and correct copy of the Memorandum of Law of Merrill Lynch & Co., Inc. in Opposition to Plaintiff's Motion to Remand filed on February 19, 2008 in the New Jersey District Court.

5.      Annexed hereto as Exhibit D is a true and correct copy of Plaintiff's Reply Brief in Further Support of Plaintiff's Motion to Remand filed on February 25, 2008 in the New Jersey District Court.

6.      Annexed hereto as Exhibit E is a true and correct copy of Plaintiff Eidman's letter addressed to this Court.

7.      Annexed hereto as Exhibit F is a true and correct copy of this Court's May 12, 2008 Order.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 12, 2008,

                                              _____
                                                    Edward Y. Kroub

# EXHIBIT A

LAW OFFICES OF JAMES V. BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

| | |
|---|---|
| David Eidman, <br> Derivatively On Behalf of <br><br> MERRILL LYNCH & CO., INC., <br><br>       Plaintiff, <br><br><br><br> v. <br><br> ERNEST STANLEY O'NEAL, <br> CAROL T. CHRIST, ARMANDO M. <br> CODINA, VIRGIS W. COLBERT, <br> ALBERTO CRIBIORE, JOHN D. <br> FINNEGAN, JUDITH MAYHEW JONAS, <br> AULANA L. PETERS, JOSEPH W. <br> PRUEHER, ANN N. REESE and <br> CHARLES O. ROSSOTTI <br><br><br>       Defendants, <br><br> and <br><br> MERRILL LYNCH & CO., INC., <br><br>       Nominal Defendant. | ) <br> )  SUPERIOR COURT OF NEW JERSEY <br> )  LAW DIVISION: BERGEN COUNTY <br> )  Docket No.: L-8872-07 <br> ) <br> )  CIVIL ACTION <br><br> )  **VERIFIED AMENDED DERIVATIVE** <br> )  **COMPLAINT** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NATURE OF THE ACTION

1.      Plaintiff, David Eidman ("Plaintiff"), brings this action derivatively on behalf of nominal defendant Merrill Lynch & Co., Inc. (hereinafter "Merrill" "Merrill Lynch" or the "Company") against its Board of Directors (hereinafter the "Board," "Director Defendants," ), in connection with breaches of their fiduciary duties of loyalty, due care and oversight of Merrill's imprudent underwriting of Collateralized Debt Obligations ("CDOs") and insufficient internal controls and mismanagement by the Company's managing senior executives between 2003 and 2007 (hereinafter the "Relevant Time Period"). Plaintiff alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based on the investigation conducted by counsel.

2.      This shareholder derivative suit seeks to remedy Defendants' breach of fiduciary duties, abuse of control, and gross mismanagement arising out of a wrongful course of business conduct whereby Defendants: (i) caused Merrill to engage in unsound underwriting practices of CDOs that ultimately forced the Company to write down losses exceeding $7.9 billlion for the third quarter of 2007; (ii) exposed Merrill to over $40 billion in CDOs as of July of 2007; and (iii) agreed to allow the Chief Executive Officer to resign and receive a full retirement package worth more than $160 million.

## JURISDICTION AND VENUE

3.      The allegations contained herein are brought derivatively on behalf of nominal defendant Merrill. Accordingly, this Court has jurisdiction pursuant to N.J. Court Rules, R. 4:32-5.

4.      Plaintiff David Eidman currently resides in Bergen County, New Jersey. Accordingly, Venue is properly laid in this County pursuant to N.J. Court Rules, R.4:3-2(a).

2

## PARTIES

### Plaintiff

5.     Plaintiff David Eidman is a Merrill shareholder and was a Merrill shareholder throughout the entirety of the time period of the complained of actions alleged herein, and remains a Merrill shareholder continuously to date. Plaintiff David Eidman purchased shares on November 16, 2003. Plaintiff is a citizen and resident of the State of New Jersey.

### Nominal Defendant

6.     Nominal Defendant Merrill Lynch & Co., Inc. is a corporation incorporated, organized and existing under the laws of the State of Delaware, with its registered office located at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle. The Company's central corporate headquarters is located at 4 World Financial Center, 250 Vesey Street, New York, New York, 10080. According to the Company's website, "Merrill is one of the world's leading wealth management, capital markets and advisory companies, with offices in 38 countries and territories and total client assets of approximately $1.8 trillion. Merrill Lynch offers a broad range of services to private clients, small businesses, and institutions and corporations, organizing its activities into two interrelated business segments - Global Markets & Investment Banking Group and Global Wealth Management, which is comprised of Global Private Client and Global Investment Management. As an investment bank, it is a leading global trader and underwriter of securities and derivatives across a broad range of asset classes and serves as a strategic advisor to corporations, governments, institutions and individuals worldwide."

3

**Director Defendants**

7.    Defendant Ernest Stanley O'Neal is the former Chief Executive Officer and the former Chairman of the Board of Directors of Merrill. He resigned on November 1, 2007 after having served in numerous senior management positions at the Company prior to serving as Chief Executive Officer. Defendant O'Neal joined Merrill in 1986 and worked in the bond department. In the early 1990s, Defendant O'Neal became the head of Merrill's leveraged finance division. After serving as global head of capital markets and co-head of the corporate and institutional client group, he spent two years as CFO from 1998 to 2000. He then became President of Merrill's U.S. Private Client Group, before becoming President of the Company in 2001. In 2003, Mr. O'Neal became CEO and Chairman of the Board of Merrill Lynch. In addition, Mr. O'Neal was a member of the Board of Directors of General Motors from 2001-2006, and recently resigned from the Board of Directors of BlackRock, Inc. on October 30, 2007. Defendant O'Neal is a citizen of the State of New York.

8.    Defendant Carol T. Christ has been a Merrill Director since July of 2007 and has served as a member of the Public Policy and Responsibility Committee of the Board. In June 2002, Director Christ became the 10th president of Smith College. Prior to that, Ms. Christ spent more than 30 years at the University of California, Berkeley. She joined the English faculty in 1970, and, as chair of her department from 1985 to 1988, she built and maintained one of the top-ranked English departments in the country. She entered the University's administration in 1988, serving first as Dean of Humanities and later as Provost and Dean of the College of Letters and Sciences. In 1994, Ms. Christ was appointed Vice Chancellor and provost at Berkeley. Defendant Christ is a citizen of the State of Massachusetts.

4

9.      Defendant Armando M. Codina has been a Merrill Director since 2005. Defendant Codina is currently the President and Chief Executive Officer of Flagler Development Group, a real estate investment, development, construction, brokerage and property management company, and has been since 2006. He was also the Founder, Chairman and CEO of Codina Group, a real estate investment company from 1979, until its combination with Flagler Development Group in 2006. He also serves as a director on the board of the following companies: AMR Corp., Burger King Corp., Florida East Coast Industries, Inc., and GM. Defendant Codina is a citizen of the State of Florida.

10.     Defendant Virgis W. Colbert has been a Merrill Director since 2006. Defendant Colbert has also served as the Senior Advisor to the Miller Brewing Company, a beer brewing company, since 2006. He was employed at Miller Brewing Company from 1997 through 2005, where he served in a variety of positions, including as the Executive Vice President of Worldwide Operations. Defendant Colbert has been, or currently is, a board member of the following companies: The Manitowoc Company, Inc., Sara Lee Corporation, and The Stanley Works. Defendant Colbert is a citizen of the State of Wisconsin.

11.     Defendant Alberto Cribiore has been a Merrill Director since 2003. Immediately following the departure of Defendant O'Neal from Merrill, he was elected by the Merrill Board to serve as Interim Non-Executive Chairman. Defendant Cribiore is the founder and Managing Principal of Brera Capital Partners, LLC, a private equity investment firm, and has been since 1997. He has also served as the Co-President of Clayton, Dubilier & Rice, Inc., an equity investment firm, from 1985 through 1997. From 1982 to 1985 he served as the Senior Vice President of Warner Communications, predecessor to Time Warner Inc. and was responsible for

5

business strategy, mergers, acquisitions and divestitures. Defendant Cribiore is a citizen of the State of New York.

12.    Defendant John D. Finnegan has been a Merrill Director since 2004. He has been the President and CEO of The Chubb Corporation since December 2002 and has been the Chairman of the Board since December 2003.  He has also served as the Executive Vice President of GM, where he also served as the Chairman and President of GM Acceptance Corporation, a finance company and subsidiary of GM, from May 1999 to December 2002. Defendant Finnegan has a B.A. degree in political science from Princeton University, a law degree from Fordham University and an M.B.A. from Rutgers University.  Defendant Finnegan is a citizen of the State of New Jersey.

13.    Defendant Judith Mayhew Jonas has been a Merrill Director since 2006. Defendant Jonas has been a member of the United Kingdom government's Equality Review Panel since 2005.  She has a law degree from the University of Otaga, New Zealand's oldest university. She has also served as Provost of Kings College, Cambridge from 2003 to 2006. She is a citizen of the United Kingdom.

14.    Defendant Aulana L. Peters has been a Merrill Director since 1994. She has a B.A. in philosophy from the College of New Rochelle, New York and has a law degree from the University of Southern California in Los Angeles, California. She was a partner of the law firm Gibson, Dunn & Crutcher from 1984 to 1998.  She has served as a Commissioner of the Securities and Exchange Commission. Defendant Peters has or currently serves as a board member of the following companies: 3M, Deere & Company and Northrop Grumman Corporation. Defendant Peters is a citizen of the State of California.

15.     Defendant Joseph W. Prueher has been a Merrill Director since 2001.  Defendant Prueher has served as a former United States Ambassador for the People's Republic of China from 1999 to 2001.  Defendant Prueher was a consulting Professor at the Stanford University Center for International Security and Cooperation and a lecturer and Senior Advisor to the Stanford-Harvard Defense Project.  From 1996 to 1999, Prueher served in the military as Commander in Chief of U.S. Pacific Command and as a retired admiral.  Defendant Prueher currently serves or has served on the boards of the following companies: Emerson Electric Company, Fluor Corporation, DynCorp. International, McNeil Technologies, New York Life Insurance Company and the Wornick Company.  Director Prueher is a citizen of the State of Virginia.

16.     Defendant Ann N. Reese has been a Merrill Director since 2004.  Defendant Reese has a B.A. from the University of Pennsylvania and an M.B.A. from the New York University Stern School of Business.  She is the Co-Founder of the Center for Adoption Policy and served as a Principal for Clayton, Dubilier & Rice from 1999-2000.  Defendant Reese has served on the boards of the following companies: CBS, Jones Apparel Group, Sears Roebuck and Co., and Xerox.  She has also served as an FAS Advisory Council member.  Defendant Reese is a citizen of the State of New York.

17.     Defendant Charles O. Rossotti has been a Merrill Director since 2004.  Defendant Rossotti is a former Commissioner of Internal Revenue at the United States Internal Revenue Service.  He served in that position from 1997 to 2002.  He was the founder, Chairman of the Board, President and CEO of American Management Systems, an international business and information technology consulting firm, from 1970 to 1997.  Defendant Rossotti has also served as a Senior Advisor to The Carlyle Group, a private global investment firm, since 2003. He has

served as a director on the boards of the following companies: AES Corp., Adesso Systems

Corp., Compusearch Software Systems, Inc., and Liquid Engines, Inc. Defendant Rossotti is a

citizen of Washington D.C.

## Merrill's Board Committees

18.    The chart below illustrates the key Board committees and their current

membership:

| | Audit Committee | Finance Committee | Management Development & Compensation Committee | Nominating & Corporate Governance Committee | Public Policy & Responsibility Committee |
|---|---|---|---|---|---|
| Alberto Cribiore (Interim Chairman) | | ✓ | ✓ | ✓ | |
| Carol T. Christ | | | | | ✓ |
| Armando M. Codina | | | ✓ | Chair | |
| Virgis W. Colbert | | | ✓ | ✓ | ✓ |
| John D. Finnegan | | ✓ | Chair | ✓ | |
| Judith Mayhew Jonas | ✓ | | | | ✓ |
| Aulana L. Peters | | | ✓ | | ✓ |
| Joseph W. Prueher | ✓ | | | | Chair |
| Ann N. Reese | Chair | ✓ | | | |
| Charles O. Rossotti | ✓ | Chair | | | |

## Merrill's Audit Committee

19.    According to the Audit Committee's charter, the Audit Committee is primarily

responsible for:

> **Assist[ing] the Board in fulfilling its oversight responsibility relating to the:**
>
> **A. Preparation and integrity of the Corporation's financial statements and oversight of related disclosure matters;**
>
> **B. Qualifications, independence and performance of, and the Corporation's relationship with, its registered public accounting firm (the "independent auditor");**

8

**C. Performance of the Corporation's internal audit function and internal controls; and**

**D. Compliance by the Corporation with legal and regulatory requirements.**

(Emphasis added).

**Merrill's Finance Committee**

20.     According to the Finance Committee's charter, the Finance Committee is primarily responsible for:

**Assist[ing] the Board in fulfilling its oversight responsibilities relating to:**

**A. Financial commitments and investments;**

**B. The Corporation's financial and operating plan;**

**C. The Corporation's financing plan, including funding, liquidity and insurance programs;**

**D. Balance sheet and capital management; and**

**E. Credit and market risk management.**

(Emphasis added).

## DEFENDANTS' DUTIES

21.     Defendants owe and owed Merrill fiduciary obligations of fidelity, trust, loyalty, candor, and due care, and were and are required to manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each Defendant owes Merrill the highest obligations of good faith and fair dealing. In addition, as officers and/or directors of a publicly held company, Defendants have a duty to manage the Company's exposure to credit and market risk in order to prevent losses.

9

22.     The Director Defendants, because of their positions of control and authority of Merrill, were able to and did, directly and indirectly, control the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial, and directorial positions with Merrill, each Defendant had access to material, adverse, non-public information about the financial condition, operations and future business prospects of Merrill, including, without limitation, the misconduct in which Defendants caused Merrill to engage.

23.     By knowingly engaging in and/or knowingly acquiescing in the wrongful conduct complained of herein, Defendants breached the fiduciary duties that each of them owed to Merrill and caused Merrill to incur billions of dollars in damages and other injuries more fully described below.

24.     By reason of their positions as officers, directors and/or fiduciaries of Merrill and because of their ability to control the business and corporate affairs of Merrill, Defendants owed Merrill and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Merrill in a fair, just, honest and equitable manner. Defendants were and are required to act in furtherance of the best interests of Merrill and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

25.     Each director and officer of the Company owes to Merrill and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, Defendants

10

had a duty to assure themselves and shareholders that Merrill would not write down over $7.9

billion of losses due to its positional overexposure in risky CDOs.

### SUBSTANTIVE ALLEGATIONS

26.    Merrill Lynch has boasted about its strong internal operational and credit risk

management controls since as early as 2001. At a joint conference on capital allocation for

operational risk hosted by the Federal Reserve Bank of Boston in November of 2001, Clinton

Lively, then Managing Director of Corporate Risk Management at Merrill, described Merrill's

Process Risk Management Program.

27.    By way of an elaborate PowerPoint presentation (which is annexed as Exhibit A

hereto), Mr. Lively stated that Merrill's risk management program goals to were to: (i) motivate

its internal control personnel to "learn from mistakes"; and (ii) "**assess[] the adequacy of**

**controls for the risks we take.**" Mr. Lively's presentation stated:

> "The key criteria for developing the model for us has been how well it motivates
> managers to adopt the practices we have endorsed. **The internal mechanics of the**
> **model are a secondary priority – and become important only in so far as they**
> **influence behavior in the firm.** To this end, **business units receive reductions in their**
> **risk capital allocations to the extent they engage in the practices prescribed by the**
> **program- and for initiatives which result in demonstrated reductions in process**
> **risk.**"

(Emphasis added).

28.    As described in particular detail below, the Director Defendants and Merrill's

other senior ranking executives completely disregarded Merrill's Process Risk Management

Program and, as a result, permitted Merrill to engage in and become exposed to highly risky

investments such that Merrill's financial risk exposure was materially beyond the risk levels

permitted by Merrill's Process Risk Management Program.

11

29.     The Director Defendants either completely failed to, or were totally ineffective in curtailing Merrill from making these highly risky investments that were made in direct contravention of Merrill's Process Risk Management Program and, as a direct result, caused the Company to incur billions of dollars in losses. The Director Defendants blatantly ignored the restrictions imposed by Merrill's Process Risk Management Program and permitted Merrill's employees to do so as well, all to the extreme financial detriment of the Company.

30.     The Director Defendants were responsible for acting to insure that Merrill's Process Risk Management Program was implemented, and that the Company's employees were acting in accordance with this Program. The Director Defendants were also responsible for acting to insure that there was a system of checks and balances in place to monitor the activities of the Company's employees. Contrary to the public image that was painted of Merrill being a Company that prided itself on having and utilizing strong risk management policies and practices, Merrill was in fact a Company that did not adhere to its stated risk management policies and whose employees failed to conduct themselves in accordance with such policies. Such misconduct on the part of Merrill's employees was the direct result of the Director Defendants failing to fulfill their fiduciary responsibilities.

**Merrill's Former CEO**
**Was Obsessed With**
**Competing With Goldman Sachs**

31.     Merrill Lynch was a Company with substantial problems when Defendant O'Neal was given the responsibilities of CEO and Chairman of the Board in late 2001. At the same time, the Company's chief competitor, Goldman Sachs, was recording and reporting tremendous revenues and was quickly separating itself from the failing Merrill Lynch.

32.    In order to close the gap, and in appreciation of the deep financial woes that were then plaguing the Company, Defendant O'Neal fired a substantial portion of Merrill's workforce and tightened the Company's overall costs and spending in an attempt to maintain Merrill's reputation as a Wall Street leader.

33.    These actions proved to be insufficient in closing the widening gap between Merrill's performance and Goldman Sach's performance, however.    As a result, Defendant O'Neal implemented a new strategy that involved the risky financing of debt and derivatives, instruments whose valued is based upon the change in some underlying asset.

**Merrill Management**
**Takes On Added Risk**
**In Violation Of Merrill's**
**Process Risk Management Program**

34.    According to a Wall Street Journal ("WSJ") article dated October 25, 2007, O'Neal determined that Merrill needed to exponentially raise its holdings in the speculative business of securitizations in order to increase its profitability and to enhance its standing vis-à-vis Goldman Sachs.    In order to implement its new and aggressive investment strategy, Merrill hired major players in the CDOs and securitization industries, including Christopher Ricciardi, "who liked to be called the grandfather of CDOs."

35.    Securitization is the process of creating a financial instrument by combining other financial assets and then marketing them to investors.    These secured instruments are backed by loans, leases or receivables.    There are many types of secured instruments including, but not limited to, asset backed securities, residential mortgage backed securities and commercial mortgage backed securities.    An asset backed security is one backed by any receivable that is not earned from real estate.    Examples of asset backed securitizations include credit card receivables, automobile loans/leases/floor plan receivables and volatile aircraft receivables.

13

36.    Mortgage backed securities ("MBS"), on the other hand, are backed by the receivables from residential and commercial mortgages. In an MBS, the trust's pooled collateral varies and can consist of strong conforming mortgages or can consist of high risk sub-prime mortgages. Sub-prime mortgages are highly susceptible to default because the requested mortgages are issued to borrowers that have low income, shaky credit, job instability and few assets. Residential MBS accounts for close to half of all securitization collateral and almost 75% of all MBS are secured by sub-prime loans.

37.    CDOs are pools of debts that bundle together a collection of securities and are sold through an assortment of tranches that are assessed based upon the safety and security of the underlying collateral. The investors in the CDOs bear the credit risk of the collateral. The tranches are categorized as senior, mezzanine and subordinated according to their degree of credit risk. If there are defaults in the loans, or if the collateral backing the CDO otherwise underperforms, the senior tranches are the first on the food chain and get paid out first. Every CDO has a sponsoring organization, which establishes the vehicle to hold collateral and issue securities.

**Merrill Becomes the World's Leading Sponsor of CDOs**

38.    In response to the stock market troubles of late 2000, the Federal Reserve slashed interest rates with hopes of reviving the economy. This period of sustained drop in interest rates allowed the mortgage industry to significantly streamline underwriting and fulfillment operations, thus driving down the cost to refinance and providing enhanced access to credit to marginal borrowers. There were also reductions in down payment requirements and the movement to low documentation loans greatly expanded during the early 2000s.

14

39.     The fuel behind the increased loan documentation was the issuance of CDOs. CDO issuance was just $52 billion in 1999, but it rapidly rose to an astounding $388 billion in 2006. The sale of these instruments to investors brought new capital into the business of mortgages, and helped recycle loans so lenders could lend more, creating a national housing boom.

40.     As the issuance throughout the industry rose, so too did Merrill's underwriting of CDOs and the fees associated with such underwriting. According to the above mentioned WSJ article, "Merrill leapt from 15th place among CDO underwriting ranks in 2002, when it arranged just $2.22 billion of deals, to the No. 1 spot on Wall Street in 2004 with $19 billion, according to Dealogic. In 2005 Merrill's underwriting total soared to $35 billion, of which $14 billion were backed mostly by securities tied to sub-prime mortgages... [Merrill] reaped an estimated $400 million in CDO underwriting profits in 2005."

41.     By reason of the fact that Merrill was investing considerable monies in risky securitizations, the Director Defendants should have inquired and/or acted to insure that these investments were conducted in accordance with Merrill's Process Risk Management Program. By failing to do so, the Director Defendants breached the fiduciary duties that each of them owed to Merrill.

42.     Director Defendants decided instead to reward Merrill's management for violating the Company's Process Risk Management Program. Specifically, Defendant O'Neal's compensation was tied to the amount of fees that Merrill generated and in 2006, O'Neal received an $18.5 million bonus on top of $30 million in various forms of compensation. By approving such a bonus, the Director Defendants actively rewarded this ongoing violation of Merrill's Process Risk Management Program and improperly rewarded management's imprudent

investing strategies, thereby subjecting the Company tremendous financial risk and wasting Merrill's assets by utilizing Merrill funds to compensate management that was acting in direct violation of Merrill's Process Risk Management Program, as further detailed herein.

43.    However, the roller coaster peaked in early 2006, when signs of trouble in the market for sub-prime mortgages began appearing. Home prices started declining for the first time in years and home builders' orders slowed. Credit agencies that ranked CDOs began downgrading the now risky investments. Companies started scrambling to concoct proper exit strategies that would lessen their exposure to CDOs.

**Despite The Burst Of The Housing
Bubble, Merrill Keeps Underwriting CDOs**

44.    Notwithstanding the fact that most companies were attempting to cut off all ties to sub-prime mortgages, Defendants allowed Merrill to continue on its spree of underwriting CDOs. According to the WSJ, top executives "sought to reassure the CDO group that Merrill remained committed to the business, saying it would do "whatever it takes" to remain No. 1 in CDOs..."

45.    Under the leadership of Defendant O'Neal, Merrill underwrote over 100 CDO deals with a value over $90 billion between 2006 and 2007. The Company collected millions in underwriting fees, and consequently, O'Neal collected millions in compensation. Merrill's overall exposure to the volatile CDOs of mortgage backed securities exceeded $41 billion as of late June of 2007.

46.    The Director Defendants should not have allowed this risky exposure and should have seen the red flags associated with maintaining the abnormal CDO positions. Yet, there is no reported activity of either the Audit Committee or the Finance Committee, let alone the entire Board, taking any steps whatsoever to stop management from continuing to engage in these

16

highly risky investments in violation of Merrill's Process Risk Management Program. While other prudent firms were positioning themselves against a fall, Merrill continued its head-first plunge into the sub-prime CDOs.

47.    Despite the obvious fact that Merrill's management had repeatedly violated Merrill's Process Risk Management Program and lost control, Defendant O'Neal assured investors in June of 2007 that the problems in the sub-prime area "were reasonably well contained" adding that "there have been no clear signs that it was spilling into other subsets of the bond market, the fixed income market and the credit market." This statement was known to be false to the Director Defendants at the time it was made by Defendant O'Neal because the Director Defendants knew, but did not disclose, that Merrill's management had long been engaged in making highly risky CDO investments in violation of Merrill's Process Risk Management Program, but failed to disclose this clearly material fact.

**Merrill Is Unable To Unload Its**
**Oversized Position In CDOs, And Writes**
**Down Billions of Dollars Of CDOs**

48.    Because of the housing slump that was progressively worsening by the month, Merrill was unable to find buyers willing to accept any significant portion of Merrill's $41 billion position in the risky CDO market. Specifically, as of October of 2005, Merrill still held a position of over $20.9 billion.

49.    In early October of 2007, Merrill issued its earnings pre-release and estimated an astounding overall **$4.5 billion** write-down across CDOs and U.S. subprime mortgages for the third quarter of 2007.

50.    However, in an October 24, 2007 earnings conference call, Defendant O'Neal made a rare telephonic appearance and announced that Merrill, in fact, was forced to write down

an overall **$7.9 billion** across CDOs and U.S. subprime mortgages, $2.4 billion higher than the earnings pre-release estimate. Merrill also announced that day that it incurred a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006.

51.    This announced loss was a shocking $2 billion dollars higher than the loss expected based upon the material misstatements made by Merrill just a couple of weeks prior and was the Company's largest loss in around 100 years. The fact that the Company had failed to accurately disclose its expected losses and had understated this expected loss by more than $2 billion clearly establishes that the Director Defendants had failed to act to insure that Merrill's investment activities in the CDO market were conducted in accordance with Merrill's Process Risk Management Program, or alternatively, that these policies were in place and were blatantly ignored.

52.    The already depressed shares of Merrill fell over 5% since the write off announcement. As well, numerous credit agencies have downgraded the Company's ratings.

53.    The press release issued that same day stated:

> Merrill Lynch (**NYSE: MER**) today reported a net loss from continuing operations for the third quarter of $2.3 billion, or $2.85 per diluted share, significantly below net earnings of $2.22 per diluted share for the second quarter of 2007 and $3.14 for the third quarter of 2006. Third-quarter 2006 net earnings per diluted share, excluding the impact of the one-time, after-tax net benefit of $1.1 billion ($1.8 billion pretax) related to the merger of Merrill Lynch Investment Managers (MLIM) and BlackRock (NYSE: BLK), were $1.97. Third-quarter 2007 results reflect significant net write-downs and losses attributable to Merrill Lynch's Fixed Income, Currencies & Commodities (FICC) business, including write-downs of $7.9 billion across CDOs and U.S. subprime mortgages, which are significantly greater than the incremental $4.5 billion write-down Merrill Lynch disclosed at the time of its earnings pre-release. These write-downs and losses were partially offset by strong revenues in Global Wealth Management (GWM), Equity Markets and Investment Banking, particularly in regions outside

18

of the U.S. The results described above and herein, exclude Merrill Lynch Insurance Group (MLIG), which is reported under discontinued operations.

Third-quarter 2007 total net revenues of $577 million decreased 94 percent from $9.8 billion in the prior-year period and were down 94 percent from $9.7 billion in the second quarter of 2007. Merrill Lynch's third-quarter 2007 pretax net loss was $3.5 billion. At the end of the third quarter, book value per share was $39.75, down slightly from the end of the third quarter 2006.

Mortgage and leveraged finance-related write-downs in our FICC business depressed our financial performance for the quarter. In light of difficult credit markets and additional analysis by management during our quarter-end closing process, we re-examined our remaining CDO positions with more conservative assumptions. The result is a larger write-down of these assets than initially anticipated," said **Stan O'Neal**, chairman and chief executive officer. "We expect market conditions for subprime mortgage-related assets to continue to be uncertain and we are working to resolve the remaining impact from our positions," Mr. O'Neal continued. "Away from the mortgage-related areas, we continue to believe that secular trends in the global economy are favorable and that our businesses can perform well, as they have all year."

Net revenues for the first nine months of 2007 were $20.0 billion, down 23 percent from $25.8 billion in the comparable 2006 period. Net earnings per diluted share of $1.94 were down 62 percent from $5.12 in the prior-year period, and net earnings of $2.0 billion were down 61 percent. Results for the first nine months of 2006 included $1.2 billion of one-time, after-tax compensation expenses ($1.8 billion pretax) related to the adoption of Statement of Financial Accounting Standards No. 123R ("one-time compensation expenses") incurred in the first quarter of 2006, as well as the net benefit associated with the MLIM merger. Excluding these one-time items, net revenues for the first nine months of 2007 were down 16 percent, net earnings per diluted share were down 63 percent and net earnings were down 62 percent from the prior-year period. The pretax profit margin for the first nine months was 12.8 percent, down 14.2 percentage points from the comparable 2006 period, or down 16.3 percentage points excluding the one-time items. The annualized return on average common equity was 6.5 percent, down 13.0 percentage points from the first nine months of 2006, or down 13.4 percentage points excluding the one-time items.

**Business Segment Review:**

In the first quarter of 2006, Merrill Lynch recorded the one-time compensation expenses (pretax) in the business segments as follows: $1.4 billion to Global Markets and Investment Banking, $281 million to Global Wealth Management and $109 million to Merrill Lynch Investment Managers (which ceased to exist as a business segment upon its merger with BlackRock). The one-time net benefit associated with the MLIM merger was recorded in the Corporate Segment.

Comparisons to results from the third quarter and first nine months of 2006 in the following discussion of business segment results exclude the impact of these one-time items. A reconciliation of these segment results appears on <u>Attachment V</u> to this release.

**Global Markets & Investment Banking (GMI)**
GMI recorded negative net revenues and a pretax loss for the third quarter of 2007 of $3.0 billion and $4.4 billion, respectively, as strong net revenues from Equity Markets and Investment Banking were more than offset by the net losses in FICC. GMI's third quarter net revenues also included a net benefit of approximately $600 million due to the impact of the widening of Merrill Lynch's credit spreads on the carrying value of certain long-term debt liabilities.

- Third-quarter and year-to-date 2007 net revenues from GMI's three major business lines were as follows:
- FICC net revenues were negative $5.6 billion for the quarter, impacted primarily by losses across CDOs and U.S. subprime mortgages. These positions consist of CDO trading positions and warehouses, as well as U.S. subprime mortgage related whole loans, warehouse lending, residual positions and residential mortgage backed securities.

\*     \*     \*

<u>**Third-quarter write-downs of $7.9 billion across CDOs and U.S. subprime mortgages are significantly greater than the incremental $4.5 billion write-downs Merrill Lynch disclosed at the time of its earnings pre-release. This is due to additional analysis and price verification completed as part of the quarter-end closing process, including the use of more conservative loss assumptions in valuing the underlying collateral.**</u>

(Emphasis added).

54.     The $7.9 billion write down by the Company clearly shows that the Director Defendants were grossly negligent in their oversight of management.  By not questioning Merrill's corporate credit risk investment strategy, the Board proximately caused Merrill to incur billions of dollars in damages.

55.     On October 25, 2007, the WSJ reported that:

"The 8.4 billion dollar hit leaves it clear that Mr. O'Neal and his team did not always appreciate the risks they took to achieve the greater profits.  The write-downs surpass a $6 billion loss suffered in 2005 by the hedge fund Amaranth LLC, which had stood as the largest single known Wall Street loss...**On the**

20

**Conference call, Mr. O'Neal accepted a share of the responsibility, saying, "I am accountable for the mistakes as I am accountable for the performance of the firm overall."**

(Emphasis added).

**O'Neal Attempts To Single-handedly**
**Merge Merrill With Wachovia Without Board Authority**

56.    Despite the admissions made by Defendant O'Neal regarding the mistakes he made in authorizing the underwriting of the risky CDOs, and despite the fact that the price per share of Merrill fell over 30% in just over 3 months, the Director Defendants did not fire Defendant O'Neal from his position as CEO of the Company.

57.    On October 26, 2007, the New York Times reported that Defendant O'Neal had conducted serious merger talks with Wachovia Bank without prior authorization or approval from Merrill's Board.  Knowing that he would secure a severance package exceeding $250 million, Defendant O'Neal pushed for a merger that would result in new management of the Company.

**Director Defendants Approve The**
**Resignation Of Defendant O'Neal**
**From Merrill And Improperly Reward**
**Him With A $160 Million Payment**

58.    On October 30, 2007, Merrill issued a press release announcing the retirement of Defendant O'Neal from the Company. The press release stated:

> The company said Mr. O'Neal and the board of directors both agreed that a change in leadership would best enable Merrill Lynch to move forward and focus on maintaining the strong operating performance of its businesses, which the company last week reported were performing well, apart from sub-prime mortgages and CDOs. 'We would like to thank Stan for the contribution he has made leading a major transformation of Merrill Lynch into a global and diversified company with enormous potential ahead of it,' said Mr. Cribiore. '**His commitment to the company, its clients, shareholders and employees has**

21

**never wavered and the company will reap tremendous benefits in the future from his work.'**

(Emphasis added).

59.    The Board should have fired Defendant O'Neal after the Company announced its biggest loss in close to 100 years. Instead, the Director Defendants substantially wasted corporate assets by unjustifiably rewarding him with an over $160 million retirement package.

60.    According to the Corporate Library, the leading independent source for U.S. corporate governance:

> Stanley O'Neal's departure from Merrill Lynch with 'no severance' and no 2007 bonus would seem to present a picture of a decisive board in control. **Yet, when 'no severance' equals $161.5 million and an office and executive assistant for three years, what else did they think they needed to give him?...When a compensation committee retains discretion over whether a severance package will be offered, it would seem to suggest that it will exercise its discretion in favor of shareholders. Yet all this meant was that it decided not to pay the approximately $30 million in cash severance that might have been due had Mr. O'Neal pulled off a merger with Wachovia**... But while the board is trying to present itself as decisive and in control now, **where was its oversight when the strategic decisions that led to this massive wrote-off of value were being made.** Since it also looks as if the board may be considering an external candidate...it appears to have failed in yet another of its most important duties: ensuring a proper succession plan is in place...**Finally, The Corporate Library has rated the Merrill Lynch board as a high risk board for all but 18 months of the five years we have provided ratings on company governance.**

(Emphasis added).

**The Director Defendants Permitted**
**Merrill To Issue A Series Of Materially False**
**And Misleading Financial Statements and SEC Filings**

61.    In addition to the acts detailed above, Defendants caused false statements to be issued in SEC filings. On February 26, 2007 the Company filed a 10-K with the SEC for 2006, which stated that "our GMI business generated record setting financial performance by continuing to serve clients well, **take measured principal risk** and execute on a variety of key

22

growth initiatives around the world...we announced an agreement to acquire First Franklin mortgage origination franchise and related servicing platform from National City Corporation..." (Emphasis added).

62.     These statements were materially false at the time, because Merrill was, in reality, overexposed to billions of dollars in the fast sinking CDOs that were backed by subprime loans. The agreement to purchase First Franklin perplexed analysts at the time, as it did not appear to make good business sense to invest in an industry that was tanking.     These imprudent investments caused by the actions or inactions of the Board all resulted in the massive financial losses that crippled the Company since October of 2007.

63.     On April 19, 2007, Merrill announced its financial results for the first quarter of 2007, and stated that "This was a terrific quarter...our product capabilities and geographic reach are stronger and broader now than at any point in our history, **and we continue to make investments to further enhance our franchise**." (Emphasis added).

64.     The true fact remained that the Company was overexposed and was continuing to make further investments in CDOs that further **injured** the Company.

65.     On August 03, 2007, Merrill filed its Form 10-Q with the SEC and stated that:

> "Merrill Lynch continues to be a major participant in these markets with risk exposures through cash positions, loans, derivatives and commitments. Given current market conditions, significant risk remains that could adversely impact these exposures and results of operations. **We continue our disciplined risk management efforts to proactively execute market strategies to manage our overall portfolio of positions and exposures with respect to market, credit and liquidity risks.**"

(Emphasis added).

66.     By permitting Merrill and its management to issue these materially false and misleading statements, the Director Defendants breached their fiduciary duties to Merrill.

23

67.     It took a $7.9 billion debacle in order for the Company and the Board to appreciate that remedial measures were needed to correct the failure to adhere to Merrill's stated Process Risk Management Program and limit the Company's exposure to CDOs. Only **after** Merrill had suffered billions of dollars in damages did Merrill create the position entitled Chief Risk Officer and vest this employee with the primary responsibility of monitoring both market and credit risk functions. According to the Company's 10-Q filed dated November 7, 2007:

> "In addition, with the establishment of the Chief Risk Officer…we are enhancing our capacity to monitor the associated risk levels vigilantly on a daily basis to ensure that they remain within corporate risk guidelines and risk tolerance levels."

The fact that the Company admitted in a SEC filing that they needed to "remain within corporate risk guidelines and risk tolerance levels" conclusively proves that the Director Defendants were grossly negligent in their oversight of the Company.

68.     According to a New York Times article dated November 04, 2007, the Securities and Exchange Commission has initiated an informal inquiry and investigation to examine whether Merrill accurately valued the Company's mortgage portfolio.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

69.     Plaintiff brings this action derivatively in right and for the benefit of Merrill to redress injuries suffered, and to be suffered, by Merrill as a direct result of the breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.

70.     Merrill is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

71.     Plaintiff will adequately and fairly represent the interests of Merrill in enforcing and prosecuting its right.

72.     Plaintiff is and was an owner of stock of Merrill during the relevant time period of Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company. Plaintiff will remain a shareholder of Merrill through the conclusion of this litigation.

73.     Plaintiff has not made any demand on the Board of Merrill to institute this action because such a demand would be futile for the following reasons:

a.     The Director Defendants are accused of breaching their fiduciary duties and are liable for failing to ensure adequate internal controls and adequate means of supervision to prevent the wrongs alleged herein.

b.     The Director Defendants have for a substantial time been aware, or should have been aware, of the wrongs alleged, but have chosen not to protect Merrill or rectify the policies and practices complained of herein. The Director Defendants have participated in, acquiesced in, and approved the wrongs alleged and did so in breach of their duties to Merrill's shareholders. The Defendants therefore participated in a continuing course of corporate misconduct that included the following:

(i)     Director Defendants were involved in reviewing and/or disseminating the materially false and misleading statements and information contained in the Company's SEC filings, press releases, and other public documents, were aware or recklessly disregarded that materially false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws. Each Director Defendant was provided with copies of the documents alleged herein to be misleading prior to their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Defendant is responsible for the accuracy of the public reports and releases detailed

herein, and is therefore primarily liable for the materially false representations contained therein.  Because the Defendants are liable for filing incorrect statements with the SEC and are thereby liable for violating the federal securities laws, demand would be futile.

(ii)    The Director Defendants Reese, Rossotti, Prueher and Jonas currently comprise the Audit Committee and individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws.    Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Audit Committee failed to perform its duties, thereby exposing any and all of the Director Defendants to liability for their breach of fiduciary duties.  As well, the Audit Committee shares some responsibility for overseeing risk policies and, therefore, Director Defendants Reese, Rossotti, Prueher and Jonas are liable for not ensuring that the employees of the Company did not overexpose the company to damaging risk.  By not implementing proper risk procedures and by failing to comply with the risk procedures in place, Defendants Reese, Rossotti, Prueher and Jonas did not exercise reasonable due care and allowed the Company to be exposed to $41 billion in CDOS and enabled a write down of over $7.9 billion in losses in the third quarter.  Accordingly, the Director Defendants on the Audit Committee cannot impartially act on a demand;

(iii)    The Director Defendants Reese, Rossotti, Finnegan and Cribiore currently comprise the Finance Committee and individually and collectively failed in their duties of ensuring that the Company competently manage its credit risk exposure.  According to

the Finance Committee's charter that was in effect throughout the relevant time period, the Finance Committee is primarily responsible "for credit and market risk management." By allowing the Company to obtain a $41 billion position in CDOs and by allowing the Company to suffer $7.9 billion in losses as a direct result of their gross negligence and failure to properly manage risk, Director Defendants Reese, Rossotti, Finnegan and Cribiore abdicated their fiduciary duties of due care and failed to monitor the Company's risk properly. As well, the Director Defendants mentioned above individually and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws. An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws. Because Merrill's financial statements described herein contained material misstatements and omissions about the Company's exposure to risky CDOs, the Finance Committee failed to perform its duties, therefore, demand would be futile;

(iv)     Director Defendants Cribiore, Colbert, Codina, Finnegan and Peters currently comprise the Management Development and Compensation Committee of the Board. The Director Defendants approved and authorized Defendant O'Neal retirement and thereby enabled him to receive an undeserving $161.5 million resignation package. This waste of corporate assets was perpetrated by the Director Defendants, and exposed them to liability as those monies should have been distributed to Merrill's shareholders and were intentionally misappropriated; and

27

(v)    Defendant O'Neal selected five sixths of the current Board. As such, the Director Defendants feel an obligation of indebtedness to management, and therefore will not bring this lawsuit on behalf of the Company;

c.    The Director Defendants are accused of conduct that is not subject to business judgment protection or subject to ratification.

d.    The wrongful actions or inactions complained herein by the Director Defendants amounted to breaches of their fiduciary duties of good faith, disclosure, due care and loyalty to Merrill and its shareholders, and the abdication of their responsibilities give rise to liability to the Company.

e.    The Director Defendants failed to put into place adequate internal controls and adequate means of supervision to stop the wrongful conduct alleged herein despite the fact that the Board knew or should have known about such wrongful business practices.

74.    These acts, and the acts alleged in this action, demonstrate a pattern of misconduct.  A pattern of gross misconduct is not conduct taken in a good faith exercise of business judgment.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Breach of Fiduciary Duties Against All Defendants**

75.    Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

76.    Each of Defendants owed and owes fiduciary duties to Merrill and its shareholders. By reason of their fiduciary relationships, Defendants all owed Merrill the highest obligation of good faith, fair dealing, loyalty and due care and diligence in the management of

the affairs of the Company. Moreover, Defendants owed and owe the duty of full and candid disclosure of all material facts.

77. Defendants have been responsible for the gross and reckless management of Merrill and ignored their fiduciary responsibilities by:

  (i)   allowing the Company to amass an uncontrolled underwriting and position in CDOs that were mainly based on risky collateral in the form of sub-prime mortgages. The Company was forced to write down $7.9 billion in losses due to the breaches of fiduciary duties by the Director Defendants;

  (ii)  actively or indirectly causing the filing of false public statements that contained material misstatements and omissions regarding the financial health of the Company; and

  (iii) wasting corporate assets by rewarding Defendant O'Neal with an $161.5 million resignation package.

78. All Defendants engaged in the above conduct in intentional breach of their fiduciary duties to the Company.

79. Defendants conspired to abuse, and did abuse, their positions of control and oversight in Merrill.

80. Plaintiff and Merrill have been injured by reason of Defendants' disregard to their important fiduciary duties to the Company. Plaintiff as a shareholder and representative of the company seeks damages and other relief for the Company.

81. Plaintiff on behalf of Merrill has no adequate remedy at law.

29

## SECOND CAUSE OF ACTION

### Abuse of Control Against All Defendants

82.    Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

83.    Defendants' misconduct alleged herein constituted a breach of their fiduciary duties because they abused their ability to control and influence on Merrill, for which they are legally responsible.

84.    As a direct and proximate result of Defendants' abuse of control, Merrill has sustained significant damages.

85.    As a result of the misconduct alleged herein, Defendants are liable to the Company.

86.    Plaintiff on behalf of Merrill has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### Gross Mismanagement Against All Defendants

87.    Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

88.    By their actions alleged herein, Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Merrill in a manner consistent with the operations of a publicly held corporation.

89.    As a direct and proximate result of Defendants' gross mismanagement and breaches of duty alleged herein, Merrill has sustained significant damages.

30

90.    As a result of the misconduct and breaches of duty alleged herein, Defendants are liable to the Company.

91.    Plaintiff on behalf of Merrill has no adequate remedy at law.

### FOURTH CAUSE OF ACTION

#### Waste Of Corporate Assets Against All Defendants

92.    Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

93.    As a result of the improper conduct described herein, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, Defendants have caused Merrill to waste valuable corporate assets by: awarding excessive compensation to senior executives, and by incurring potentially million of dollars of legal liability and legal costs to defend Defendants' unlawful actions.

94.    Plaintiff on behalf of Merrill has no adequate remedy at law.

### FIFTH CAUSE OF ACTION

#### Quasi Contract/ Unjust Enrichment Against All Defendants

95.    Plaintiff incorporates by reference and realleges each and every allegation set forth herein.

96.    By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of, and to the detriment of, Merrill.

97.    Plaintiff, as a shareholder and representative of Merrill, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A. Against Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment;

B. Directing Merrill to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Merrill and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote on Corporate Governance Policies concerning compliance with all applicable IRS regulations and federal tax laws;

C. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding and imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Merrill has an effective remedy;

D. Awarding to Merrill restitution from Defendants, and each of them, including ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E. Awarding Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F. Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR A TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable as a matter of right.


## RULE 4:5-1 CERTIFICATION

To the best of my knowledge, the matter in controversy is not the subject of any other action or arbitration proceeding, now or contemplated, and that no parties should be joined in this action pursuant to R. 4:5-1.


Dated:  December 17, 2007

By: _____

LAW OFFICES OF JAMES V.
BASHIAN, P.C..
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665


Paul O. Paradis, Esq.
Gina M. Tufaro, Esq.
James Smith, Esq.
**HORWITZ, HORWITZ &
PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone:  (212) 404-2200
Fax:     (212) 404-2226


Attorneys For Derivative Plaintiff


33

## VERIFICATION

I, David Eidman, hereby state under penalty of perjury under the laws of the United States that:

1.    I am the named plaintiff in this action.

2.    I verify that I have reviewed the attached Verified Amended Derivative Complaint (the "Amended Complaint") and authorized my counsel to file the Amended Complaint.

3.    To the best of my knowledge, information and belief, the facts set forth in the Amended Complaint are true and correct.

Sworn to under penalty of perjury this 17th day of December, 2007.

_____
David Eidman

_____
James Bashian, Attorney Admitted to
Practice in the State of New Jersey

# EXHIBIT B

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman, Derivatively and on Behalf Of MERRILL LYNCH & CO., INC.,<br><br>   Plaintiff,<br><br>v.<br><br>ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI<br><br>   Defendants,<br><br>and<br><br>MERRILL LYNCH & CO., INC.,<br><br>   Nominal Defendant. | )<br>)<br>)<br>)<br>) Hon. Susan D. Wigenton, U.S.D.J.<br>)<br>) **CASE NO. 08-CV-00126 (SDW)(MCA)**<br>)<br>)<br>)<br>)<br>)<br>)<br>) **NOTICE OF MOTION TO REMAND**<br>) **MOTION DAY:** February 19, 2008<br>)<br>)<br>)<br>)<br>)<br>) **ELECTRONICALLY FILED**<br>)<br>)<br>) |

TO: Michael R. Griffinger
   GIBBONS, P.C.
   One Gateway Center
   Newark, NJ 07102-5310
   Tel: (973) 569-4500
   Fax: (973) 639-6294

Jay B. Kanser
Scott D. Musoff
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Tel: (212) 735-3000
Fax: (212 735-2000

COUNSEL:

**PLEASE TAKE NOTICE** that plaintiff David Eidman, derivatively and on

behalf of Nominal Defendant, Merrill Lynch & Co., Inc. by and through his undersigned

counsel, shall move before the Honorable Susan D. Wigenton, U.S.D.J., on February 19,

2008 at 10:00a.m., or a soon thereafter as counsel may be heard, at the United States

Courthouse for the District of New Jersey, 50 Walnut Street, Newark 07101, for an Order

remanding this matter to the Superior Court of New Jersey, Law Division, Bergen

County, New Jersey.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff shall rely upon the

accompanying Memorandum in Support of the Motion to Remand, and upon the

pleadings and all prior proceedings had herein.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of Order and

certificate of service accompany this motion.

Plaintiff respectfully requests oral argument on this motion.

Dated: January 23, 2008                    By: s/James V. Bashian

                                           LAW OFFICES OF JAMES V.
                                           BASHIAN, P.C.
                                           James V. Bashian, Esq. (JB-6331)
                                           271 Route 46 West, Suite F207
                                           Fairfield, New Jersey 07004
                                           Tel: (973) 227-6330
                                           Fax: (973) 808-8665

2

Paul O. Paradis, Esq.
Michael A. Schwartz, Esq.
Gina M. Tufaro, Esq.
Edward Kroub, Esq.
**HORWITZ, HORWITZ &**
**PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone:  (212) 404-2200
Fax:     (212) 404-2226

Attorneys For Derivative Plaintiff

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| David Eidman,<br>Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC., | ) ) ) ) | **CASE NO. 08-CV-00126** |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MEMORANDUM OF LAW<br>IN SUPPORT OF PLAINTIFF'S<br>MOTION TO REMAND** |
| ERNEST STANLEY O'NEAL,<br>CAROL T. CHRIST, ARMANDO M.<br>CODINA, VIRGIS W. COLBERT,<br>ALBERTO CRIBIORE, JOHN D.<br>FINNEGAN, JUDITH MAYHEW JONAS,<br>AULANA L. PETERS, JOSEPH W.<br>PRUEHER, ANN N. REESE and<br>CHARLES O. ROSSOTTI, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| and | ) ) ) | |
| MERRILL LYNCH & CO., INC., | ) ) ) | |
| Nominal Defendant. | ) ) | |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS .........................................................................................1

ARGUMENT...............................................................................................................2

    I.  STANDARD OF REVIEW ........................................................................2

    II. "FEDERAL QUESTION" JURISDICTION DOES NOT EXIST
       HERE BECAUSE PLAINTIFF HAS NOT ALLEGED ANY
       CLAIMS ARISING UNDER FEDERAL LAW ........................................2

    III. DEFENDANTS' REMOVAL OF THIS ACTION WAS
        ENTIRELY IMPROPER ...........................................................................3

CONCLUSION..............................................................................................................8

i

## TABLE OF AUTHORITIES

Page

CASES

Boyer v. Snap-On Tools Corp.,
913 F.2d 108 (3d. Cir. 1990)............................................................................2

Carrington v. RCA Global Communications, Inc.,
762 F. Supp. 632 (D.N.J. 1991)......................................................................3

Caterpillar Inc. v. Williams,
482 U.S. 386, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)...............................3

Exxon Mobil Corp., v. Allapattah Services, Inc.,
545 U.S. 546, 125 S. Ct. 2611, 162 L.Ed.2d 502 (2005)...............................2

Fagin v. Gilmartin,
No. 03-2631, 2007 U.S. Dist. Lexis 7256 (D.N.J. Feb. 1, 2007)......................4, 5, 6, 7

Fathergill v. Rouleau,
No.  03-CV-0879-D, 2003 U.S. Dist. Lexis 10654 (N.D. Tex. Jun. 23, 2003) .............6

Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,
545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).........................................5, 7

Stechler v. Sidley Austin Brown & Wood, LLP,
No. 05-3485, 2006 U.S. Dist. LEXIS 1148 (D.N.J. Jan. 13, 2006)...........................6, 7

Steel Valley Author. v. Union Switch & Signal Div.,
809 F.2d 1006 (3d Cir. 1987)..........................................................................2

STATUTES

28 U.S.C. § 1331........................................................................................2, 3

28 U.S.C. § 1441.........................................................................................3

28 U.S.C. § 1441(b).................................................................................1, 2, 3

28 U.S.C. § 1447(c) ...................................................................................1, 2

## PRELIMINARY STATEMENT

On January 9, 2008, Defendants improperly removed this action from the Superior Court of New Jersey to the United States District Court for the District of New Jersey. Removal was improper under 28 U.S.C. § 1441(b) because the District Court does not have "original jurisdiction" over the action.

Pursuant to 28 U.S.C. § 1447(c), David Eidman ("Plaintiff"), through his counsel, hereby submits this Memorandum of Law in support of Plaintiff's Motion to Remand this action to the Superior Court of New Jersey.

## STATEMENT OF FACTS

This shareholder derivative action alleges state law claims on behalf of Merrill Lynch & Co., Inc. ("Merrill" or the "Company") for breach of fiduciary duty, abuse of control, and gross mismanagement against Merrill's Board of Directors (the "Board"). Plaintiff alleges that the Board: (i) caused Merrill to engage in unsound underwriting practices involving Collateralized Debt Obligations ("CDO's") that ultimately forced the Company to incur losses exceeding $7.9 billion for the third quarter of 2007; (ii) exposed Merrill to over $40 billion in CDOs as of July of 2007 in violation of Merrill's own Process Risk Management Program; (iii) caused Merrill to report a pre-tax loss from continuing operations of $14.9 billion for the fourth quarter of 2007; and (iv) agreed to allow Defendant O'Neal, the Chief Executive Officer, to resign and receive a retirement package worth more than $160 million. Cplt. ¶¶ 1-2. Plaintiff does <u>not</u> allege any claims arising under the federal securities laws.

Plaintiff is a citizen of the State of New Jersey. Cplt. ¶ 5. Plaintiff alleges claims against various members of Merrill's Board, including Defendant John D. Finnegan, who

1

is also a citizen of the State of New Jersey. Cplt. ¶ 12. Accordingly, complete diversity

of citizenship among the Plaintiff and Defendants does not exist.[1]

Because Plaintiff's Complaint does not allege any federal claims and "complete"

diversity does not exist here, Plaintiff properly filed this action in the Superior Court of

New Jersey.

Accordingly, Plaintiff respectfully moves this Court to remand the above-

referenced action to the Superior Court of New Jersey pursuant to 28 U.S.C. § 1447(c).

## ARGUMENT

### I.    STANDARD OF REVIEW

Removal statutes "are to be strictly construed against removal and all doubts

should be resolved in favor of remand." Steel Valley Author. v. Union Switch & Signal

Div., 809 F.2d 1006, 1010 (3d Cir. 1987). In addition, "a party who urges jurisdiction on

a federal court bears the burden of proving that jurisdiction exists." Boyer v. Snap-On

Tools Corp., 913 F.2d 108, 111 (3d. Cir. 1990). Defendants cannot meet this burden.

### II.    "FEDERAL QUESTION" JURISDICTION DOES NOT
EXIST HERE BECAUSE PLAINTIFF HAS NOT
ALLEGED ANY CLAIMS ARISING UNDER FEDERAL LAW

28 U.S.C. § 1441(b) provides that a claim can be removed from state court to a

federal court if the district court has "original jurisdiction" over the civil action. "The

district courts shall have original jurisdiction of all civil actions arising under the

---

[1]    See Exxon Mobil Corp., v. Allapattah Services, Inc., 545 U.S. 546, 125 S. Ct.
2611, 162 L.Ed.2d 502 (2005)("we have consistently interpreted § 1332 as requiring
complete diversity: In a case with multiple plaintiffs and multiple defendants, the
presence in the action of a single plaintiff from the same State as a single defendant
deprives the district court of original diversity jurisdiction over the entire action").

2

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This type of jurisdiction is known as "federal question" jurisdiction.

In order for the District Court to have "federal question" jurisdiction over a civil claim, the claim must "arise under" some federal law. See 28 U.S.C. § 1441(b). "The presence or absence of federal question is governed by the well-pleaded complaint rule, which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded Complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). The well-pleaded complaint rule bars federal jurisdiction where a complaint, on its face, states only state law causes of action, even though issues of federal law may be involved. See Carrington v. RCA Global Communications, Inc., 762 F. Supp. 632, 636 (D.N.J. 1991).

In this action, it is clear from the face of the Complaint that Plaintiff has not alleged any claim arising under any federal law. For example, Count I alleges "breach of fiduciary duty claims against all defendants." Cplt. ¶¶ 75-81. Count II alleges "abuse of control against all defendants." Cplt. ¶¶ 82-86. Count III alleges "gross mismanagement against all defendants." Cplt. ¶¶ 87-91. Count IV alleges "waste of corporate assets against all defendants." Cplt. ¶¶ 92-94. Count V alleges "Quasi Contract/Unjust Enrichment against all defendants." Cplt. ¶¶ 95-97.

Because the complaint does not allege any claims that "arise under" any federal laws, "original jurisdiction" in the District Court does not exist here.[2]

---

[2]      Plaintiff has not pleaded, nor have Defendants argued, that diversity jurisdiction exists.

## III.    DEFENDANTS' REMOVAL OF THIS ACTION WAS ENTIRELY IMPROPER

Defendants incorrectly contend that this action is removable pursuant to 28 U.S.C. § 1331 and § 1441 because: (i) "the focus and thrust of the Complaint is alleged conduct that is governed by, and allegedly in contravention of, the federal securities laws"; and (ii) "Plaintiff's alleged injuries also depend primarily upon accusations against Merrill Lynch for violations under the federal securities laws." Defendants' Notice of Removal at ¶¶ 10, 16. In essence, Defendants argue that because the Complaint references the fact that Defendants caused Merrill to file false United States Securities and Exchange Commission ("SEC") filings, Plaintiff has asserted federal claims. Tellingly, Defendants do not cite any cases in support of their erroneous argument – and clearly ignore one very recent decision by a court in this District that sharply contradicts Defendants' argument. See Fagin v. Gilmartin, No. 03-2631, 2007 U.S. Dist. Lexis 7256 (D.N.J. Feb. 1, 2007) (Chesler, J.).

As discussed above, Defendants' argument is based on a mischaracterization of the state law breach of fiduciary duty claims alleged in the Complaint as federal claims, which they clearly are not. Indeed, it is clear from the face of the Complaint that Plaintiff has not alleged any claims "arising under" the federal securities laws -- or any other federal laws -- but only alleges violations of state law. See Cplt. ¶¶ 75-97. All of the claims asserted by Plaintiff in the Complaint are traditional state law claims that are exclusively adjudicated in state courts. Significantly, Defendants do not contest the fact that this Complaint, on its face, alleges traditional state law counts.

Instead, Defendants incorrectly contend that Plaintiff's state law breach of fiduciary duty claims are somehow transformed into federal securities law claims because

4

the Complaint makes reference to the fact that Defendants breached the fiduciary duties
that they owed to Merrill by, among other things, causing Merrill to make false SEC
filings.

This argument is without merit.    Indeed, Judge Chesler, in a shareholder
derivative action that bears a strong factual resemblance to this case, recently held that
Defendants' argument is incorrect as a matter of law. See Fagin v. Gilmartin, 2007 U.S.
Dist. Lexis 7256. In Fagin, plaintiffs brought a shareholder derivative action against
members of Merck's Board of Directors and Medco Health Solutions, Inc., alleging
breaches of fiduciary duties, violations of unjust enrichment and contribution and
indemnification in state court. See id.    Plaintiff alleged that the Merck Board had
breached the fiduciary duties that they owed to Merck by, among other things, causing
Merck to improperly recognize revenue of pharmacy co-payments and make false filings
with the SEC.

On the basis of these allegations, defendants in Fagin removed the action to the
United States District Court for the District of New Jersey claiming that, even though the
complaint pled state law causes of action, the District Court had original federal question
jurisdiction over the action because those claims "turn on a substantial federal issue and
therefore 'arise under' federal law." Fagin, 2007 U.S. Dist. Lexis 7256, at *7.

As Judge Chesler noted, the Supreme Court in Grable & Sons Metal Products,
Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257
(2005), "articulated the standard for determining whether the presence of a federal issue
in a purely state law claim may give rise to federal question jurisdiction under § 1331."
Fagin, 2007 U.S. Dist. Lexis 7256, at *11.

> The [Supreme] Court held that "the question is, does a state-law claim
> necessarily raise a stated federal issue, actually disputed and substantial,
> which a federal forum may entertain without disturbing any
> congressionally approved balance of federal law and state judicial
> responsibilities." Id. at 315.

Id, 2007 U.S. Dist. Lexis 7256, at *11-12.

Thus, in rejecting the exact same arguments that Defendants have advanced here -

- that the merits of Plaintiffs' state law claims necessarily require the Court to resolve

whether the acts allegedly constituting breach of fiduciary duty violated federal securities

laws (id. at *13) -- the Fagin court found that the commission of federal securities

violations was not an essential element of the state law causes of actions pled in the

shareholder derivative suit that alleged state law breach of fiduciary duty:

> In the Court's opinion, however, these factual predicates alleging that one
> component of the alleged wrongdoing was, in essence, making false
> filings with the SEC, do not transform the state claims into claims seeking
> redress for federal violations and do not raise a substantial and disputed
> question of federal law. The embedded federal issues in this case are not
> substantial because determining the merits of the claims does not depend
> on construction of federal law. (Citation omitted). . . . That a court may be
> called upon to evaluate the offending conduct in light of what federal
> securities laws and regulations require does not federalize the claims for
> unjust enrichment, breach of fiduciary duty and contribution and
> indemnification. The claims pled require the evaluation of duties that are
> at their core defined by state law. Predicating the alleged violation of
> duties existing by virtue of state law on conduct which may involve
> federal securities violations does not bring the federal securities laws to
> the forefront of the action. Moreover, with regard to the division of labor
> component of the Grable test, this Court is of the opinion that entertaining
> the claims presented here would overreach the limits of jurisdiction
> conferred upon this Court and put the Court in the unacceptable - and
> unauthorized - position of passing on matters of state law... .

Fagin, 2007 U.S. Dist. Lexis 7256, at *13-15. (Emphasis added). [3]

---

[3]    See also Fathergill v. Rouleau, No.  03-CV-0879-D, 2003 U.S. Dist. Lexis 10654,
at *3-5 (N.D. Tex. Jun. 23, 2003) (State law claims not based on federal law; federal right
was not a substantial, disputed element).

Similarly, in <u>Stechler v. Sidley Austin Brown & Wood</u>, LLP, No. 05-3485, 2006

U.S. Dist. LEXIS 1148 (D.N.J. Jan. 13, 2006) (Ackerman, J.), defendants removed an

action to the District of New Jersey, and argued in opposition to plaintiffs' remand motion

that plaintiffs' breach of contract, breach of fiduciary duties and unjust enrichment claims

required the interpretation and construction of certain federal tax law provisions.

Applying the <u>Grable</u> test, the court found that the primary issue was not one of

federal tax law, but rather one of breach of fiduciary duty, a state law claim. The

interpretation of relative tax law was, at most, a relatively minor issue. <u>See Stechler</u>, 2006

U.S. Dist. LEXIS 1148, at *6.

Here, as in <u>Fagin</u>, the violations of the federal securities laws do not form the

basis of Plaintiff's claims. Rather, the claims of breach of fiduciary duty are based

simply on the fact that Defendants have violated their own credit risk policies and caused

the Company to engage in unsound underwriting practices, resulting in tens of billions of

dollars of damage to the Company from 2003 through the third quarter of fiscal 2007,

despite knowing that the risky CDOs were mostly backed by subprime mortgages. Cplt.

¶¶ 2, 26-28, 49-51. Although the Complaint here does allege that Defendants have

caused the filing of false SEC statements, this allegation does not bring the federal

securities laws to the forefront of this action.

Moreover, the gravamen of Plaintiff's Complaint is the alleged overexposure to

risky investments. Defendants deliberately violated their own self-imposed Process Risk

Management Program and Sub-Committee charters and thereby breached their fiduciary

duties, in violation of New Jersey State law. Cplt. ¶¶ 46-47. Finally, Plaintiff's Complaint

also alleges that Defendants wasted the corporation's assets by approving Defendant

7

O'Neal's resignation and awarding his mismanagement with $161 million in retirement

benefits, another cause of action exclusive to state law. Cplt. ¶¶ 58-60.

Because the well-pleaded Complaint clearly alleges only violations of state law,

and interpretation of the federal securities law is not a substantial and disputed element,

Plaintiff respectfully requests that this Court promptly remand this action to the Superior

Court of the State of New Jersey.

## CONCLUSION

Accordingly, Plaintiff respectfully requests this Court to remand his action to the

Superior Court of New Jersey.

Dated: January 22, 2008                    By: /S/ James V. Bashian

                                           LAW OFFICES OF JAMES V.
                                           BASHIAN, P.C..
                                           James V. Bashian, Esq. (JB-6331)
                                           271 Route 46 West, Suite F207
                                           Fairfield, New Jersey 07004
                                           Tel: (973) 227-6330
                                           Fax: (973) 808-8665

                                           Paul O. Paradis, Esq.
                                           Michael A. Schwartz, Esq.
                                           Gina M. Tufaro, Esq.
                                           Edward Kroub, Esq.
                                           **HORWITZ, HORWITZ &**
                                           **PARADIS, Attorneys at Law**
                                           28 West 44th Street, 16th Floor
                                           New York, NY 10036
                                           Phone: (212) 404-2200
                                           Fax:    (212) 404-2226

                                           Attorneys for Derivative Plaintiff

8

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman, Derivatively and on Behalf ) | |
| Of MERRILL LYNCH & CO., INC., ) | |
|     Plaintiff, ) | |
| v. ) | |
| ) | Hon. Susan D. Wigenton, U.S.D.J. |
| ERNEST STANLEY O'NEAL, ) | |
| CAROL T. CHRIST, ARMANDO M. ) | **CASE NO. 08-CV-00126 (SDW)(MCA)** |
| CODINA, VIRGIS W. COLBERT, ) | |
| ALBERTO CRIBIORE, JOHN D. ) | |
| FINNEGAN, JUDITH MAYHEW JONAS, ) | |
| AULANA L. PETERS, JOSEPH W. ) | |
| PRUEHER, ANN N. REESE and ) | |
| CHARLES O. ROSSOTTI ) | **[PROPOSED] ORDER OF REMAND** |
| ) | |
|     Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| MERRILL LYNCH & CO., INC., ) | |
| ) | **ELECTRONICALLY FILED** |
|     Nominal Defendant. ) | |
| ) | |

On this _____ day of _____ 2008, the court having

considered Plaintiff's Motion to Remand this action to New Jersey Superior Court, Civil

Division, Bergen County, State of New Jersey, and having considered the accompanying

papers in support thereof, any responses and replies, the arguments of counsel, if any, and

for good cause shown:

**IT IS ORDERED** that the Motion to Remand is hereby granted and the

action is remanded to the New Jersey Superior Court, Law Division, Bergen County.

_____

Hon. Susan D. Wigenton, U.S.D.J.

2

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman, Derivatively and on Behalf Of MERRILL LYNCH & CO., INC., <br> Plaintiff, <br> v. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI <br><br> Defendants, <br><br> and <br><br> MERRILL LYNCH & CO., INC., <br><br> Nominal Defendant. | Hon. Susan D. Wigenton, U.S.D.J. <br><br> CASE NO. 08-CV-00126 (SDW)(MCA) <br><br><br><br><br><br><br><br><br><br><br><br><br><br> **ELECTRONICALLY FILED** |

### CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2008, I electronically filed and served the

foregoing Notice of Motion to Remove, Certification of James V. Bashian in Support of

the Motion to Remove, a proposed Order, and Certificate of Service with the Clerk of the

District Court using the CM/ECF system pursuant to Local Civil Rule 5.2. on:

Michael R. Griffinger
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102-5310


Also, on January 23, 2008, I caused a true and correct copy of the foregoing

Notice of Motion to Remove, Certification of James V. Bashian in Support of the Motion

to Remove, a proposed Order, and Certificate of Service upon the following counsel by

regular mail:

Michael J. Chepiga
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avneue
New York, New York 10017-3954

Dennis Block
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 1028


I hereby certify that the foregoing statements made by me are true. I am aware that if

any of the foregoing statements made by me are willfully false, I am subject to

punishment

/s/ James V. Bashian
JAMES V. BASHIAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-x

DAVID EIDMAN,                              :

                        Plaintiff,        :          08 Civ. 03392 (LBS)

           -against-                      :

ERNEST STANLEY O'NEAL, et al.             :

                        Defendants.   :

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-x

In re: MERRILL LYNCH & CO., INC.,         :          07 Civ. 9633 (LBS)
       Securities, Derivative & ERISA Litigation   :

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-x

### DECLARATION OF EDWARD Y. KROUB IN SUPPORT OF PLAINTIFF EIDMAN'S MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR RULING ON PLAINTIFF'S MOTION TO REMAND THE ACTION TO THE NEW JERSEY SUPERIOR COURT PURSUANT TO 28 U.S.C. § 1447(C)

EDWARD Y. KROUB, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.     I, Edward Y. Kroub, am an associate at the law firm of Horwitz, Horwitz & Paradis, Attorneys at Law, co-counsel for plaintiff David Eidman ("Plaintiff") in the captioned action. I submit this declaration in support of Plaintiff's Memorandum of Law in Support of Request for Ruling on Plaintiff's Motion to Remand the Action to the New Jersey Superior Court Pursuant to 28 U.S.C. § 1447(c). I am admitted in the United States District Court, Southern District of New York.

2.     Annexed hereto as Exhibit A is a true and correct copy of the Amended Verified Derivative Complaint filed by Plaintiff on December 4, 2007 in New Jersey Superior Court, Bergen County.

3.      Annexed hereto as Exhibit B is a true and correct copy of Plaintiff's

Motion to Remand filed on January 23, 2008 in the New Jersey District Court.

4.      Annexed hereto as Exhibit C is a true and correct copy of the

Memorandum of Law of Merrill Lynch & Co., Inc. in Opposition to Plaintiff's Motion to

Remand filed on February 19, 2008 in the New Jersey District Court.

5.      Annexed hereto as Exhibit D is a true and correct copy of Plaintiff's Reply

Brief in Further Support of Plaintiff's Motion to Remand filed on February 25, 2008 in

the New Jersey District Court.

6.      Annexed hereto as Exhibit E is a true and correct copy of Plaintiff

Eidman's letter addressed to this Court.

7.      Annexed hereto as Exhibit F is a true and correct copy of this Court's May

12, 2008 Order.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      June 12, 2008,

                                           Edward Y. Kroub

# EXHIBIT C

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel:  973-596-4500
Fax:  973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant
Merrill Lynch & Co., Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., <br><br> Plaintiffs, <br><br> v. <br><br> ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI, <br><br> Defendants, <br><br> and <br><br> MERRILL LYNCH & CO., INC.,, <br><br> Nominal Defendant. | Civil Action No. 08-126 (SDW) (MCA) <br><br> ***Document Electronically Filed.*** <br><br> Motion Day: March 3, 2008 <br><br><br> **MEMORANDUM OF LAW OF MERRILL LYNCH & CO., INC IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |

## TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................................................i

PRELIMINARY STATEMENT...............................................................................................1

BACKGROUND ........................................................................................................................2

     A.    The Parties ...............................................................................................................2

           1.    Plaintiff ...............................................................................................2

           2.    Defendants ........................................................................................2

     B.    The Allegations of the Complaint Necessarily Raise Issues of Federal Law..........3

ARGUMENT...............................................................................................................................5

PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED.................................................5

I.     Removal Was Proper Because At Least One Of The Claims Asserted Arises
      Under Federal Law ..................................................................................................5

     A.    Standards Governing Removal of a Purported State Law Claim ............................5

     B.    Plaintiff's Claims for Breach of Fiduciary Duty, Abuse of Control and
          Waste of Corporate Assets Necessarily Raise Substantial Federal Issues ..............7

     C.    This Court May Entertain This Substantial Federal Issue "Without
          Disturbing Any Congressionally Approved Balance of Federal State
          Judicial Responsibilities"..................................................................................13

CONCLUSION..........................................................................................................................14

## TABLE OF AUTHORITIES

### CASES

Broder v. Cablevision Systems Corp., 418 F.3d 187 (2d Cir. 2005) ........................ 5, 6, 10

In re California Wholesale Electricity Antitrust Litigation, No. CV-06-954-RHW,
    2006 U.S. Dist. LEXIS 83541 (S.D. Cal. Nov. 2, 2006) .............................................. 10

Chirik v. TD Banknorth, N.A., No. 06-04866, 2008 U.S. Dist. LEXIS 3939
    (E.D. Pa. Jan. 15, 2008) .......................................................................................... 9

Donovan v. Robbins, 752 F.2d 1170 (7th Cir. 1985) ........................................................ 11

Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546 (2005) ............................... 6

Fagin v. Gilmartin, No. 03-2631, 2007 U.S. Dist. LEXIS 7256
    (D.N.J. Feb. 1, 2007) ........................................................................................ 7-8, 12

Fleming v. Lind-Waldock & Co., 922 F.2d 20 (1st Cir. 1990) ......................................... 11

Gobble v. Hellman, No. 1:02CV0076, 2002 U.S. Dist LEXIS 26833
    (N.D. Ohio Mar. 26, 2002) ....................................................................................... 9

Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,
    545 U.S. 308 (2005) ....................................................................................... 1, 5, 6, 13

Green v. William Mason & Co., 976 F. Supp. 298 (D.N.J. 1997) ..................................... 13

Gross v. Weingarten, 217 F.3d 208 ........................................................................... 11, 14

Koresko v. Murphy, 464 F. Supp. 2d 463 (E.D. Pa. 2006) ........................................ 9-10

In re Masters Mates & Pilots Pension Plan and IRAP Litigation,
    957 F.2d 1020 (2d Cir. 1992) .......................................................................... 11, 13, 14

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006) .............. 12, 14

Musick, Peeler & Garrett v. Employers Insurance of Wausau,
    508 U.S. 286 (1993) ............................................................................................... 11

Rose v. SLM Finance Corp., No. 3:05CV445, 2007 U.S. Dist. LEXIS 14646
    (W.D.N.C. Feb. 28, 2007) ........................................................................................ 9

Stechler v. Sidley Austin Brown & Wood, LLP, No. 05-3485,
    2006 U.S. Dist LEXIS 1148 (D.N.J. Jan. 13, 2006) .................................................. 12

Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., No. 06-43,
    2008 U.S. LEXIS 1091 (Jan. 15, 2008) ........................................................12

Wietschner v. Gilmartin, No. 02-4879, 2003 U.S. Dist. LEXIS 18997
    (D.N.J. Jan. 14, 2003) .......................................................................8, 9, 12

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 78aa ..........................................................................................12

15 U.S.C. § 78u-4(f) ...............................................................................11, 13

28 U.S.C. § 1331 ...................................................................................2, 5, 13

28 U.S.C. § 1441 .......................................................................................2, 5

29 U.S.C. § 1144(a) .....................................................................................12

H.R. Rep. No. 104-369 (1995) (Conf. Rep.), reprinted in
    1995 U.S.C.C.A.N. 730 ............................................................................13, 14

Pub. L. No. 104-67, 109 Stat. 737 (1995)..........................................................13

Judge Amy J. St. Eve & Brice C. Pilz, The Fault Allocation Provisions of the
    Private Securities Litigation Reform Act of 1995 - A Roadmap for Litigants
    and Courts, 3 N.Y.U. J. L. & Bus. 187 (2006) .............................................13

Marc I. Steinberg & Christopher D. Olive, Contribution and Proportionate
    Liability Under the Federal Securities Laws in Multidefendant Securities
    Litigation After the Private Securities Litigation Reform Act of 1995, 50
    S.M.U. L. Rev. 337 (1996) ...................................................................13

Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") respectfully submits this Memorandum of Law in Opposition to Plaintiff David Eidman's ("plaintiff") motion to remand. Merrill Lynch has moved for a stay of this action pending resolution of a motion before the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") to transfer this action to the Southern District of New York for coordination with 18 related actions pending there. The motion to stay is fully briefed before this Court. The J.P.M.L. has scheduled the transfer motion for consideration on March 27, 2008.

## PRELIMINARY STATEMENT

Merrill Lynch's removal of this action is proper because this action – alleging conduct identical to that alleged in the complaints asserting violations of the federal securities laws, yet purporting to assert only state-law claims – actually and necessarily raises substantial issues of federal law. Although plaintiff asserts that "it is clear from the face of the Complaint that Plaintiff has not alleged any claims 'arising under' the federal securities laws . . . but only alleges violations of state law," the complaint is actually replete with allegations that Merrill Lynch's board of directors violated the federal securities laws and plaintiff's claims depend primarily upon findings of liability under the federal securities laws. As such, plaintiff's right to relief depends upon the resolution of exclusively federal issues regarding the federal securities laws, among others. This Court may entertain these issues "without disturbing any congressionally approved balance of federal and state judicial responsibilities," Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 314 (2005), because Congress has expressed a strong interest in the application of the federal laws in question. For these reasons, as set forth below, plaintiff's motion to remand should be denied.

## BACKGROUND

This action arises out of Merrill Lynch's announcement of its third quarter

financial results on October 24, 2007, including that it had written down $7.9 billion across

CDOs and U.S. subprime mortgages. (Compl. ¶¶ 2, 50-51.) In the days and weeks following

that announcement, numerous related actions were filed in the Southern District of New York.

There are currently 18 actions pending there. This action, filed in the Superior Court of New

Jersey, Bergen County on December 4, 2007 – more than a month after the first derivative

complaint was filed (on November 1, 2007) in the Southern District of New York – was timely

removed to this Court on January 9, 2008 pursuant to 28 U.S.C. §§ 1331 & 1441. All defendants

consented to removal. Merrill Lynch also moved the J.P.M.L. on January 9, 2008 to transfer this

action to the Southern District of New York. The transfer motion will be considered by the

J.P.M.L. on March 27. On January 14, Merrill Lynch moved to stay this action pending

resolution of the Merrill Lynch's multidistrict transfer motion. On January 23, plaintiff filed a

motion to remand the action to the state court.

### A.    The Parties

#### 1.    Plaintiff

Plaintiff David Eidman alleges that he resides in Bergen County, New Jersey and

that he is and was a shareholder of Merrill Lynch "throughout the entirety of the time period of

the complained of actions alleged" in the complaint. (Compl. ¶¶ 4-5.)

#### 2.    Defendants

##### (a)    Merrill Lynch & Co., Inc.

Nominal defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") is a Delaware

corporation headquartered in New York. Through various subsidiaries, Merrill Lynch provides

wealth management, capital markets and advisory services. (Compl. ¶ 6.)

2

### (b)    The Director Defendants

The complaint names as a defendant E. Stanley O'Neal, the Chief Executive

Officer and Chairman of the Board of Directors of Merrill Lynch from 2003 until his resignation

on November 1, 2007. (Id. ¶ 7.) In addition to Mr. O'Neal, the complaint names as defendants

ten outside, non-management directors: Carol T. Christ, Armando M. Codina, Virgis W. Colbert,

Alberto Cribiore, John D. Finnegan, Judith Mayhew Jonas, Aulana L. Peters, Joseph W. Prueher,

Ann N. Reese and Charles O. Rossotti (collectively, the "Director Defendants"). (Compl. ¶¶ 8-

17.)

### B.    The Allegations of the Complaint Necessarily Raise Issues of Federal Law

Plaintiff's complaint is based upon the same alleged conduct that is at issue in the

18 related actions pending in the Southern District of New York. (See, e.g., Compl. ¶¶ 61-68.)

Those actions constitute three nearly identical derivative actions, four actions brought under the

federal securities laws and eleven actions brought under the Employee Retirement Income

Security Act of 1974, as amended ("ERISA"). As in those cases, plaintiff here alleges that each

of the Director "Defendants caused false statements to be issued in SEC filings." (Id. ¶ 61.)

Plaintiff alleges that the "Director Defendants were involved in reviewing and/or disseminating

false and misleading statements and information contained in the Company's SEC filings, press

releases, and other public documents, were aware or recklessly disregarded that materially false

and misleading statements were being issued regarding the Company, and approved or ratified

these statements, in violation of the securities laws." (Id. ¶ 73(b)(i).) Plaintiff further alleges

that "[b]ecause the [Director] Defendants are liable for filing incorrect statements with the SEC

and are thereby liable for violating the federal securities laws, demand would be futile." (Id.)

Plaintiff continues that "[t]he Director Defendants Reese, Rossotti, Prueher and

Jonas currently comprise the Audit Committee and individually and collectively failed in their

3

duties of ensuring that the Company file true and complete financial statements with the SEC and thereby are liable for violations of the federal securities laws." (Id. ¶ 73(b)(ii).) Plaintiff also alleges that "[t]he Director Defendants Reese, Rossotti, Finnegan and Cribiore currently comprise the Finance Committee . . . . and collectively failed in their duties of ensuring that the Company file true and complete financial statements with the SEC and are thereby liable for violations of the federal securities laws." (Id. ¶ 72(b)(iii).) "An informal inquiry has been initiated by the SEC in order to determine whether the Company has violated the federal securities laws." (Id.) Plaintiff also alleges that the Director "Defendants have caused Merrill to waste valuable corporate assets by: awarding excessive compensation to senior executives, and by incurring potentially million [sic] of dollars of legal liability and legal costs to defend Defendants' unlawful actions," (id. ¶ 93) and "[a]s a result of the misconduct alleged herein, Defendants are liable to the Company" (id. ¶¶ 85, 90). Plaintiff seeks a judgment against the Director "Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets and unjust enrichment."

Substantial federal questions are raised by plaintiff's allegations that the Director Defendants are liable for violations of the federal securities laws. Plaintiff alleges that the Director Defendants violated the federal securities laws both as the basis for his failure to make demand on the Board of Directors prior to commencing this action and as a basis for seeking indemnification or contribution on behalf of the Company.[1]

---

[1]  Defendants reserve all rights and defenses in connection with the action including but not limited to that the complaint should be dismissed for failure to make demand.

<u>**ARGUMENT**</u>

**PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED**

I.     **REMOVAL WAS PROPER BECAUSE AT LEAST ONE OF THE CLAIMS
       ASSERTED ARISES UNDER FEDERAL LAW**

 A. **Standards Governing Removal of a Purported State Law Claim**

   District courts have original jurisdiction of civil actions "arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Supreme Court's

decision in <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, 545 U.S.

308 (2005) "establishes that the existence of 'a cause of action created by federal law' is not a

necessary condition for federal-question jurisdiction under 28 U.S.C. § 1331 or removal

jurisdiction under 28 U.S.C. § 1441(a)." <u>Broder v. Cablevision Sys. Corp.</u>, 418 F.3d 187, 194

(2d Cir. 2005). Accordingly, the question is not, as plaintiff maintains, whether plaintiff alleges

"traditional state law counts." (Pl. Mem. at 4.) Instead, "arising under" jurisdiction under the

"artful pleading doctrine" embodies the "commonsense notion that a federal court ought to be

able to hear claims recognized under state law that nonetheless turn on substantial questions of

federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a

federal forum offers on federal issues." <u>Grable & Sons Metal Prods.</u>, 545 U.S. at 312.

"[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one,

indicating a serious federal interest in claiming the advantages thought to be inherent in a federal

forum." <u>Id.</u> at 313.

   "[T]he presence of a disputed federal issue and the ostensible importance of a

federal forum are never necessarily dispositive; there must always be an assessment of any

disruptive portent in exercising federal jurisdiction." <u>Id.</u> at 314. Therefore, the Supreme Court

5

has not stated "a 'single, precise, all-embracing' test for jurisdiction over federal issues
embedded in state-law claims between nondiverse parties." Id. (citation omitted). Accordingly,
the "test" for whether a state law claim "arises under" federal law is, "does a state-law claim
necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum
may entertain without disturbing any congressionally approved balance of federal and state
judicial responsibilities." Id. "A single claim over which federal-question jurisdiction exists is
sufficient to allow removal." Broder, 418 F.3d at 194; see also Exxon Mobil Corp. v. Allapattah
Servs., Inc., 545 U.S. 546, 562-63 (2005) (explaining that "[o]nce the case [is] removed, the
District Court ha[s] original jurisdiction over the federal-law claims and supplemental
jurisdiction under [28 U.S.C.] § 1367(a) over the state-law claims").

As set forth in Grable, for a state law claim to "arise under" federal law, it must
"necessarily raise a stated federal issue, actually disputed and substantial." 545 U.S. at 314. In
Grable, the petitioner had brought a quiet title action in Michigan State court, asserting that
respondent's title was invalid because the IRS, which had seized Grable's property and sold it to
respondent, "failed to notify Grable of its seizure of the property in the exact manner required by
[26 U.S.C.] § 6335(a)." Id. at 310-11. Respondent removed the action under federal question
jurisdiction "because the claim of title depended on the interpretation of the notice statute in the
federal tax law." Id. at 311. The Supreme Court (and both courts below) agreed: "Grable's
state complaint must specify 'the facts establishing the superiority of [its] claim,' and Grable has
premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by
federal law. Whether Grable was given notice within the meaning of the federal statute is thus
an essential element of its quiet title claim . . . ." Id. at 314-15 (first alteration in original)
(citation omitted).

6

**B.     Plaintiff's Claims for Breach of Fiduciary Duty, Abuse of Control and Waste of Corporate Assets Necessarily Raise Substantial Federal Issues**

Plaintiff's action was properly removed because, among other things, plaintiff

alleges that the Director Defendants are liable for violations of the federal securities laws and,

further, that they are liable to the Company for potentially millions of dollars of legal liability.

(Compl. ¶¶ 73(b)(i)-(iii), 93; <u>see also id.</u> at ¶¶ 85, 90 ("As a result of the misconduct alleged

herein, Defendants are liable to the Company.").)  Plaintiff alleges, for example, that the Director

"Defendants were involved in reviewing and/or disseminating false and misleading statements

and information contained in the Company's SEC filings, press releases, and other public

documents, were aware or recklessly disregarded that materially false and misleading statements

were being issued regarding the Company, and approved or ratified these statements, in violation

of the securities laws."  (<u>Id.</u> ¶ 73(b)(i).)  Additionally, plaintiff alleges that the Director

Defendants who are members of the Audit Committee and the Finance Committee are "liable for

violations of the federal securities laws" and therefore, plaintiff was excused from making a

demand on the Board of Directors prior to filing suit.

In his motion to remand, despite the foregoing – including several explicit

allegations that "Defendants are liable for violations of the federal securities laws," (Compl. ¶¶

73(b)(i)-(iii)) –plaintiff insists that he "only alleges violations of state law." (Pl. Mem. at 4.)

Ignoring his own allegations, plaintiff maintains that merely "referenc[ing] the fact that

Defendants caused Merrill to file false . . . SEC filings" does not make plaintiff's claims federal

claims. (Pl. Mem. at 4.)[2]  Based on this mischaracterization of his own allegations, plaintiff

maintains that according to a district court decision issued last year in <u>Fagin v. Gilmartin</u>, No.

03-2631, 2007 U.S. Dist. LEXIS 7256 (D.N.J. Feb. 1, 2007) (Chesler, J.), his claims do not arise

under federal law. (Pl. Mem. at 5-7.) Not only do plaintiff's claims differ significantly from

those considered in Fagin, but plaintiff fails even to mention – let alone address – the Wietschner

v. Gilmartin case, described in Fagin, which held that claims such as those asserted by plaintiff

here do arise under federal law. See Wietschner v. Gilmartin, No. 02-4879, 2003 U.S. Dist.

LEXIS 18997 (D.N.J. Jan. 14, 2003) (Cooper, J.); compare Fagin, 2007 U.S. Dist. LEXIS 7256,

at *19.

      Judge Cooper in Wietschner held that plaintiff's claims for breach of fiduciary

duty, misappropriation of confidential information and for contribution and indemnification

arose under federal law because the cause of action "involve[d] a strong federal interest" and

because the "'vindication of a right under state law necessarily turns on some construction of

federal law.'" 2003 U.S. Dist. LEXIS 18997, at *6, *8 n.3 (citing D'Alessio v. N.Y. Stock Exch.,

Inc., 258 F.3d 93 (2d Cir. 2001) and quoting Merrill Dow Pharm., Inc. v. Constr. Laborers

Vacation Trust, 463 U.S. 1, 9 (1983)). Denying plaintiff's motion to remand, the court explained

that "[p]laintiff's allegations here rely on federal law as more than mere evidence of breach of

fiduciary duty." Id. at *9. "First, defendant-directors made their allegedly inflated earnings

reports forming the basis of both Counts I and II of the Complaint, in large part, pursuant to the

requirements of federal law. Moreover, plaintiff's alleged injuries depend primarily upon

accusations against Merck for violations of federal law." Id. (citations omitted). Among other

things, plaintiff alleged that the Company was the subject of an SEC investigation as well as

securities fraud class actions and sought recovery from the director defendants therefor. Id. at *9

---

(cont'd from previous page)
[2]  Plaintiff asserts that "[s]ignificantly, Defendants do not contest the fact that this Complaint, on its face, alleges
traditional state law counts." (Pl. Mem. at 4.) To the contrary, although plaintiff only sets forth state law causes
(cont'd)

& n.5 ; see also Gobble v. Hellman, No. 1:02CV0076, 2002 U.S. Dist. LEXIS 26833, at *9 (N.D.

Ohio Mar. 26, 2002) ("It is clear from the face of its well pleaded complaint that several counts

of Plaintiff's breach of fiduciary duty claims depend upon whether Defendants violated their

duties under the Federal Exchange Act and SEC Rules and regulations. Therefore, the resolution

of Plaintiff's claims requires a construction and adjudication of substantial questions of federal

law . . . .").[3]

Here, as in Wietschner, "[p]laintiff's allegations here rely on federal law as more

than mere evidence of breach of fiduciary duty." 2003 U.S. Dist. LEXIS 18997, at *9.  Instead,

certain of plaintiff's claims and alleged injuries raise substantial federal questions.  First, plaintiff

repeatedly alleges that the Director Defendants "are liable for violating the federal securities

laws. " (Compl. ¶¶ 73(b)(i)-(iii).)  Plaintiff alleges that demand on the ten members of the Board

of Directors (all of which are non-management, outside directors (Compl. ¶¶ 8-17)) is excused

based on allegations that the Director Defendants are liable for violations of the federal securities

laws. Compare, e.g., Gobble, 2002 U.S. Dist. LEXIS 26833, at *9 (denying remand and

rejecting plaintiff's contention that "[d]efendants cannot create federal jurisdiction by injecting a

federal question into the action," noting that, to the contrary, it was the plaintiff who had injected

the federal issue into the case); see also Wietschner, 2003 U.S. Dist. 18997, at *9; Koresko v.

Murphy, 464 F. Supp. 2d 463, 469 (E.D. Pa. 2006) ("Plaintiff's rescission claim necessarily

---

(cont'd from previous page)

of action, as set forth in Notice of Removal (at ¶¶ 10-16) and herein, the complaint alleges a federal claim.

[3]    See also, e.g., Chirik v. TD Banknorth, N.A., No. 06-04866, 2008 U.S. Dist. LEXIS 3939, at *12-13 (E.D. Pa.
    Jan. 15, 2008) (federal jurisdiction existed as to declaratory judgment action seeking conversion of a savings
    account into a tax-qualified IRA nunc pro tunc, because plaintiff's action was "implicitly asking the Court (or a
    Pennsylvania state court) to declare that the IRS's procedures for giving retroactive effect to a rollover are not
    mandatory"); Rose v. SLM Fin. Corp., No. 3:05CV445, 2007 U.S. Dist. LEXIS 14646, at *10 (W.D.N.C. Feb.
    28, 2007) (federal jurisdiction existed as to plaintiff's breach of contract claim, where plaintiff asserted that
    disclosures issued pursuant to the federal Truth in Lending Act and the Real Estate Settlement Procedures Act
    formed "some substantial part of the contract on which his state law claim is based").

raises a federal issue – i.e., whether the Defendants satisfied the condition precedent to the

contract becoming binding by making the disclosures required by federal law . . . . The

outcome-determinative nature of this issue makes it 'actually disputed and substantial' at this

stage of the litigation.").[4]

Second, plaintiff's claim for waste of corporate assets (Compl. ¶¶ 92-94) seeks to

recover from the Director Defendants for "caus[ing] Merrill Lynch to waste valuable corporate

assets . . . by incurring potentially million [sic] of dollars of legal liability."[5]  The complaint also

prays for a judgment against the defendants "in favor of the Company for the amount of damages

sustained by the Company as a result of Defendants' breaches of fiduciary duties [and] waste of

corporate assets."  The only existing exposure to legal liability against the Company based on the

conduct alleged in the complaint are the federal claims, viz., claims under section 10(b) of the

Securities Exchange Act of 1934[6] and claims under ERISA.[7]  Furthermore, the only other

---

[4]    Compare, e.g., In re Cal. Wholesale Elec. Antitrust Litig., No. CV-06-954-RHW, 2006 U.S. Dist. LEXIS 83541, at *2-3 (S.D. Cal. Nov. 2, 2006) (action brought by the State of California to enforce anti-fraud and consumer protection laws against energy trading company, alleging "unlawful, unfair, fraudulent and manipulative trading schemes to the detriment of the People of the State of California" arose under federal law because the "transaction[s] underlying the alleged fraudulent trading schemes occurred pursuant to the Federal Tariffs in the wholesale energy market").  "The basis for the award of statutory damages . . . would be violations of the obligations imposed by the Federal Tariff . . . . without them, the causes of action cannot be adjudicated." Id. at *6.

[5]    Plaintiff's fourth cause of action for waste actually comprises three separate claims for waste. See Broder, 418 F.3d at 194 ("[W]hat a plaintiff presents as one 'count' may be understood to encompass more than one 'claim.'").

[6]    The federal securities claims are asserted in Life Enrichment Foundation v. Merrill Lynch & Co., 07 CV 9633(LBS); Kossef v. Merrill Lynch & Co., 07 CV 10984(LBS); Garber v. Merrill Lynch & Co., 07 CV 11080(LBS); Conn v. Merrill Lynch & Co., 07 CV 11626(LBS).  A fifth putative securities class action that had been pending was voluntarily dismissed.

[7]    The actions asserting ERISA claims against Merrill Lynch are: Estey v. Merrill Lynch & Co., 07 CV 10268(LBS); Gidaro v. Merrill Lynch & Co., 07 CV 10273(LBS); Moore v. Merrill Lynch & Co., 07 CV 10398(LBS); Yashgur v. Merrill Lynch & Co., 07 CV 10569(LBS); Donlon v. Merrill Lynch & Co., 07 CV 10661(LBS); Esposito v. Merrill Lynch & Co., 07 CV 10687(LBS); Shaughnessey v. Merrill Lynch & Co., 07 CV 10710(LBS); Boland v. Merrill Lynch & Co., 07 CV 11054(LBS); Summers v. Merrill Lynch & Co., 07 CV 11615(LBS); Eastman v. Merrill Lynch & Co., 08 CV 0058(LBS); Pascullo v. Merrill Lynch & Co., 08 CV 1116(LBS).

potential legal liability specifically identified in the complaint is "[a]n informal inquiry . . .

initiated by the SEC in order to determine whether the Company has violated the federal

securities laws."  (Compl. ¶ 73(b)(iii).)

Implicit within an attempt to recover for legal liability incurred by the Company

for alleged violations of the securities laws and ERISA is a claim for contribution.  There is

exclusive federal jurisdiction for claims under the federal securities laws and ERISA.  See Gross

v. Weingarten, 217 F.3d 208, 224 (4th Cir. 2000) (allegations of violations of section 10(b) and

Rule 10b-5 are subject to exclusive federal jurisdiction and a contribution claim based on such

liability likewise is subject to exclusive federal jurisdiction) (citing Musick, Peeler & Garrett v.

Employers Ins. of Wausau, 508 U.S. 286, 298 (1993)); 15 U.S.C. § 78u-4(f) (PSLRA

contribution provisions).  In Gross, the Fourth Circuit held, among other things, that the district

court erred in dismissing on abstention grounds a contribution claim predicated on violations of

the federal securities laws because the contribution claim "is subject to exclusively federal

jurisdiction."  Gross, 217 F.3d at 223-24; see also Musick, Peeler & Garrett, 508 U.S. at 297

(defendants in a 10(b) action have a right to seek contribution as a matter of federal law); In re

Masters Mates & Pilots Pension Plan and IRAP Litig., 957 F.2d 1020, 1027 (2d Cir. 1992)

("[W]e have held that a system of proportional fault is to be developed as part of the federal

common law of ERISA and have specifically incorporated rights to indemnity and contribution

into that body of law."); Fleming v. Lind-Waldock & Co., 922 F.2d 20, 27 (1st Cir. 1990) ("[A]

right to contribution for liability arising from a violation of a federal statute is a matter of federal

law."); Donovan v. Robbins, 752 F.2d 1170, 1179 (7th Cir. 1985) ("Where contribution is sought

by one who has had to pay damages for violating a federal statute, the scope and limitations of

the right of contribution are invariably treated as questions of federal rather than state law.").

The <u>Fagin</u> case, upon which plaintiff principally relies (Pl. Mem. at 5-6), is inapposite. There, plaintiff's complaint did not allege that the directors were liable for violating the federal securities laws and plaintiff's right to relief did "not depend on the construction of federal law." <u>Fagin</u>, 2007 U.S. Dist. LEXIS 7256, at *12-13. Plaintiff's complaint here, however, does: Plaintiff has predicated his failure to make demand on the Board of Directors on the alleged "fact" that the Director Defendants are liable for violations of the federal securities laws, and the claim for waste seeks damages from the Director Defendants for the Company's "incurring potentially million[s] of dollars of legal liability" under laws that are exclusively federal subject matter. <u>See</u> 15 U.S.C. § 78aa (exclusive federal jurisdiction over claims under the Securities Exchange Act of 1934); 29 U.S.C. § 1144(a) (exclusive federal jurisdiction over claims under ERISA). Thus, the alleged violations of federal law are not, as the court explained in <u>Wietschner</u>, simply offered as "mere evidence of breach of fiduciary duty." <u>Wietschner</u>, 2003 U.S. Dist. LEXIS 18997, at *9. Rather, here, plaintiff's right to recover depends upon the construction of federal laws and a finding of liability under those laws. [8]

Congress has repeatedly expressed substantial federal interest in matters relating to the regulation of the securities markets. As the Supreme Court has reiterated, "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 547 U.S. 71, 78 (2006); <u>see also</u> <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>, No. 06-43, 2008 U.S. LEXIS 1091 (Jan. 15, 2008) (reiterating the strong federal interest in construction and application of the federal securities laws in rejecting a so-called

---

[8]    For the same reasons, the other case relied upon by plaintiff (Pl. Mem. at 7), <u>Stechler v. Sidley Austin Brown & Wood, LLP</u>, No. 05-3485, 2006 U.S. Dist LEXIS 1148 (D.N.J. Jan. 13, 2006), is inapposite. Here, unlike in
                                                                                              *(cont'd)*

"scheme liability" under section 10(b)). Congress's codification in the Private Securities

Litigation Reform Act of 1995 ("PSLRA")[9] of special rules governing contribution in federal

securities cases further evinces the strong federal interest surrounding the findings necessary and

the corresponding degree to which a person may be held liable for contribution for securities law

violations. See 15 U.S.C. § 78u-4(f).[10]

      Although not codified by Congress, similar policy considerations have led to the

creation of <u>federal</u> common law to govern contribution claims relating to ERISA actions. <u>See</u>

<u>Masters Mates</u>, 957 F.2d at 1027; <u>see also</u> <u>Green v. William Mason & Co.</u>, 976 F. Supp. 298,

300-01 (D.N.J. 1997).

    **C.**    **This Court May Entertain This Substantial Federal Issue "Without
Disturbing Any Congressionally Approved Balance of Federal State Judicial
Responsibilities"**

      As the Supreme Court explained in <u>Grable</u>, "the federal issue will ultimately

qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment

about the sound division of labor between state and federal courts governing the application of

[28 U.S.C.] § 1331." <u>Grable & Sons Metal Prods.</u>, 545 U.S. at 313-14.  Here, as set forth above,

any liability for alleged violations of the securities laws and/or ERISA are exclusively federal by

---

<u>(cont'd from previous page)</u>
  <u>Stechler</u>, the federal issue is not a "minor issue" and retaining jurisdiction will not be inconsistent with the
congressionally approved balance of federal and state judicial responsibilities. <u>Id.</u> at *4.

[9]  Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified in part at 15 U.S.C. §§ 77z-1, 78u-4).

[10]  Among other things, the PSLRA implemented a comprehensive contribution regime including proportionate
liability for "non-knowing" violations of the federal securities laws. <u>See</u> 15 U.S.C. § 78u-4(f).; <u>see also</u> Judge
Amy J. St. Eve & Brice C. Pilz, <u>The Fault Allocation Provisions of the Private Securities Litigation Reform Act
of 1995 – A Roadmap for Litigants and Courts</u>, 3 N.Y.U. J. L. & Bus. 187 (2006); Marc I. Steinberg &
Christopher D. Olive, <u>Contribution and Proportionate Liability Under the Federal Securities Laws in
Multidefendant Securities Litigation After the Private Securities Litigation Reform Act of 1995</u>, 50 SMU L.
Rev. 337 (1996); H.R. Rep. No. 104-369, at 37-38 (1995) (Cong. Rep.), <u>reprinted in</u> 1995 U.S.C.C.A.N. 730,
736-37 (noting that "[t]he current system of joint and several liability creates coercive pressure for entirely
innocent parties to settle meritless claims rather than risk exposing themselves to liability for a grossly
disproportionate share of the damages").

statute. See Gross, 217 F.3d at 223-24; Masters Mates, 957 F.2d at 1027. Thus, requiring

plaintiff's claims to be litigated in a federal forum is necessarily consistent with congressional

judgment. This conclusion is reinforced by Congress having made substantial amendments to

the federal securities laws in the last fifteen years. Congress has indisputably shown a strong

interest in such claims and could not have intended the state courts to determine whether the

defendants here are liable for federal securities violations. See, e.g., H.R. Rep. 104-369 at 37-39;

see also Dabit, 547 U.S. at 78.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion to remand should be denied.

Dated: Newark, New Jersey
       February 19, 2008                           Respectfully submitted,


                                       By:    s/ Michael R. Griffinger
                                              Michael R. Griffinger
                                              **GIBBONS P.C.**
                                              One Gateway Center
                                              Newark, NJ 07102-5310
                                              mgriffinger@gibbonslaw.com
                                              Tel: 973-596-4500
                                              Fax: 973-639-6294

                                              *Co-Counsel for Nominal Defendant*
                                              *Merrill Lynch & Co., Inc.*

Of Counsel:

Jay B. Kasner
Scott D. Musoff
**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000


                                       14

Michael R. Griffinger
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
mgriffinger@gibbonslaw.com
Tel:  973-596-4500
Fax:  973-639-6294

Jay B. Kasner (*Pro Hac Vice* Application to be Filed)
Scott D. Musoff
**SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP**
Four Times Square
New York, New York 10036
Tel: 212-735-3000
Fax: 212-735-2000

*Co-Counsel for Nominal Defendant*
*Merrill Lynch & Co., Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID EIDMAN, Derivatively on Behalf of MERRILL LYNCH & CO., INC., | Civil Action No. 08-126 (SDW) (MCA) |
| Plaintiffs, | ***Document Electronically Filed.*** |
| v. | |
| ERNEST STANLEY O'NEAL, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, ALBERTO CRIBIORE, JOHN D. FINNEGAN, JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE and CHARLES O. ROSSOTTI, | **CERTIFICATE OF SERVICE** |
| Defendants, | |
| and | |
| MERRILL LYNCH & CO., INC., | |
| Nominal Defendant. | |

I, **Geoffrey A. North**, hereby certify as follows:

1.      I am an associate of the law firm of Gibbons P.C., co-counsel for nominal

defendant Merrill Lynch & Co., Inc. ("Merrill Lynch") in the above-captioned action.

2.      On February 19, 2008, pursuant to Local Civil Rule 5.2, I electronically filed and

served (i) Memorandum of Law of Merrill Lynch & Co., Inc in Opposition to Plaintiff's Motion

to Remand and (ii) this Certificate of Service; upon the following counsel:

James V. Bashian, Esq.                          Paul O. Paradis, Esq.
**Law Offices of James V. Bashian, P.C.**       **Horwitz, Horwitz & Paradis**
271 Route 46 West, Suite F207                   28 West 44th Street, 16th Floor
Fairfield, NJ 07004                             New York, NY 10036
*Attorneys for Plaintiffs*                       *Attorneys for Plaintiffs*

3.      Also on February 19, 2008, I served each of the preceding documents *via*

electronic mail and regular mail upon the following counsel:

Michael Schwartz, Esq.                          Michael J. Chepiga, Esq.
**Horwitz, Horwitz & Paradis**                   **Simpson Thacher & Bartlett LLP**
28 West 44th Street, 16th Floor                 425 Lexington Avenue
New York, NY 10036                              New York, NY 10017-3954
mschwartz@hhplawny.com                          mchepiga@stblaw.com
*Attorneys for Plaintiffs*                       *Attorneys for Defendant Ernest Stanley O'Neal*

Jason M. Halper, Esq.
**Cadwalader, Wickersham & Taft LLP**
One World Financial Center
New York, NY 10281
jason.halper@cwt.com
*Attorneys for Defendants Carol T. Christ,*
*Armando M. Codina, Virgis W. Colbert,*
*Alberto Cribiore, John D. Finnegan,*
*Judith Mayhew Jonas, Aulana L. Peters,*
*Joseph W. Prueher, Ann N. Reese and Charles O. Rossotti*

I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  February 19, 2008
        Newark, New Jersey

                                                Geoffrey A. North

2

#1270799 v1
101454-61824

# EXHIBIT D

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman,<br>Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>ERNEST STANLEY O'NEAL,<br>CAROL T. CHRIST, ARMANDO M.<br>CODINA, VIRGIS W. COLBERT,<br>ALBERTO CRIBIORE, JOHN D.<br>FINNEGAN, JUDITH MAYHEW JONAS,<br>AULANA L. PETERS, JOSEPH W.<br>PRUEHER, ANN N. REESE and<br>CHARLES O. ROSSOTTI,<br><br>                    Defendants,<br><br>and<br><br>MERRILL LYNCH & CO., INC.,<br><br>                    Nominal Defendant. | **CASE NO. 08-CV-00126**<br><br><br><br><br>**REPLY BRIEF IN FURTHER**<br>**SUPPORT OF PLAINTIFF'S**<br>**MOTION TO REMAND** |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ..................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT............................................................................................................. 4

DEFENDANT'S REMOVAL OF THIS ACTION
WAS IMPROPER BECAUSE THE COMPLAINT
DOES NOT ALLEGE ANY CLAIMS FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS................................ 4

    A.    There Are No Disputed and Substantial
            Federal Securities Laws Issues .................................................. 5

    B.    The Courts in Fagin and Gargiulo Disagree with
            the Wietschner Decision ............................................................. 9

    C.    Plaintiff Does Not Allege
            a Cause of Action for Contribution........................................... 11

CONCLUSION......................................................................................................... 12

## TABLE OF AUTHORITIES

Page

## CASES

D'Alessio v. N.Y. Stock Exch., Inc.,
258 F.3d 93 (2d Cir. 2001)..........................................................................................10

Fagin v. Gilmartin,
No. 03-2631, 2007 U.S. Dist. Lexis 7256 (D.N.J. Feb. 1, 2007)..................8, 9, 10, 11

Gargiulo v. Decker,
No. SACV05-00103, 2005 U.S. Dist. LEXIS 6002
(C.D. Cal. March 30, 2005) ...........................................................................6, 7, 9, 10

Gobble v. Hellman,
No. 1:02CV0076, 2002 U.S. Dist. LEXIS 26833 (N.D. Ohio Mar. 26, 2002)............10

Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,
545 U.S. 308 (2005).................................................................................................4, 10

Lander v. Hartford Life & Annuity Ins. Co.,
251 F.3d 101 (2d Cir. 2001).......................................................................................10

Wietschner v. Gilmartin,
No. 02-4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003)......................9, 10

## STATUTES

15 U.S.C. § 78bb(f)(3)(5)(C) .......................................................................................10

## INTRODUCTION

Plaintiff David Eidman ("Plaintiff") respectfully submits this reply memorandum of law in further support of his motion to remand this action to the Superior Court of New Jersey.

## PRELIMINARY STATEMENT

Contrary to Defendant's arguments, Plaintiff's allegations do not raise disputed and substantial federal securities law issues. Accordingly, this action was improperly removed to federal court.

This shareholder derivative action alleges breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and violations of quasi contract/unjust enrichment. The gravamen of Plaintiff's Amended Derivative Complaint ("Complaint or "Cplt., ¶__") is that Merrill Lynch & Co., Inc.'s ("Merrill" or "Defendant") board of directors ("Director Defendants") knowingly abdicated their credit risk management responsibilities and thereby caused Merrill to: (i) incur losses exceeding $7.9 billion in the third quarter of 2007 as a result of reckless investments in high risk Collateralized Debt Obligations ("CDOs"); (ii) be exposed to over $40 billion in CDOs as of July 2007; and (iii) allow Director Defendant Stanley O'Neal to resign and receive a full retirement package worth over $160 million. Cplt., ¶ 2.

Central to Plaintiff's Complaint is the allegation that Merrill had an internal Process Risk Management Program that "the Director Defendants...completely disregarded...and, as a result, permitted Merrill to engage in and become exposed to highly risky investments such that Merrill's financial risk exposure was materially beyond the risk levels permitted by Merrill's Process Risk Management Program." Cplt.,

1

¶ 28.  Remarkably, the truth of this allegation was admitted by Merrill's new Chief Executive Officer John Thain in a January 18, 2008 <u>Wall Street Journal</u> article wherein Mr. Thain stated, "<u>Merrill had a Risk Committee.  It just didn't function</u>."  (Emphasis added.)

Merrill's overall exposure to the volatile CDOs of subprime mortgage backed securities exceeded $41 billion as of late June of 2007. Cplt., ¶ 45.  Despite Merrill's over-exposure in risky CDOs, the Director Defendants recklessly failed to require that Merrill's officers act in the best long and short term interests of Merrill. <u>See, e.g.</u>, Cplt., ¶ 41 ("Director Defendants should have inquired and/or acted to insure that these investments were conducted in accordance with Merrill's Process Risk Management Program.  By failing to do so, the Director Defendants breached the fiduciary duties that each of them owed to Merrill").

It took a $7.9 billion loss for the Director Defendants to begin to address the failure to adhere to Merrill's stated Process Risk Management Program, and thereby limit the Company's exposure to high risk CDOs.  Only <u>after</u> Merrill had suffered billions of dollars in damages did Merrill create the position entitled Chief Risk Officer who was to have the primary responsibility of monitoring both market and credit risk functions. Cplt., ¶ 67.

The Complaint details the fiduciary and other duties that the Director Defendants completely and recklessly abdicated in violation of state law. <u>See, e.g.</u>, Cplt., ¶ 20 ("Finance Committee is primarily responsible for...[c]redit and market risk management."); Cplt., ¶ 21 ("Defendants...owed Merrill fiduciary obligations of fidelity, trust, loyalty, candor, and due care and... have a duty to manage the Company's exposure

to credit and market risk in order to prevent losses."); Cplt., ¶ 25 ("as…directors of a publicly held company, Defendants had a duty to assure themselves and shareholders that Merrill would not write down over $7.9 billion of losses due to its positional overexposure in risky CDOs");. Cplt., ¶ 30 (Director Defendants' failure to fulfill their fiduciary responsibilities led to Merrill's failure to adhere to its stated risk management policies).

The Complaint also identifies the substantial corporate assets that the Director Defendants wasted. For example, in addition to causing the Company to incur billions of dollars in losses in CDOs, the Director Defendants, rather than firing Defendant O'Neal for presiding over the Company's biggest loss in 100 years, rewarded him with a $160 million retirement package. Cplt., ¶ 59.

Because the Complaint only alleges state law claims for breach of fiduciary duty and does not allege claims for violations of the federal securities laws, this action was improperly removed, and this Court should now remand the action to the New Jersey Superior Court where is was originally and properly filed.

As detailed above and in the Complaint, the issues relating to federal securities laws cited by Defendant are entirely contrived, and are not necessary or substantial issues that need to be resolved. Further, Plaintiff alleges no cause of action the prosecution of which fundamentally relies on the interpretation of federal law. Defendant's Memorandum of Law ("Defs. Br.") attempts to sidestep this point by repeatedly citing to the scant few paragraphs in the Complaint that mention federal securities laws. Defendant fails to appreciate that the mere mention of the federal securities laws in the Complaint does not transform this action alleging violations of state law into an action

3

'arising under' federal law. Although the violation of the securities laws may be one of the many consequences of Defendant's conduct, that does not require the trial court to decide issues of federal law.

Moreover, Defendant's bald assertion that federal securities issues form Plaintiff's basis for "seeking indemnification and contribution on behalf of the Company" does not make it true. Plaintiff does not request contribution or indemnification in any of the Counts in the Complaint, either explicitly or implicitly. The corporate waste alleged throughout the Complaint is based on a number of factors, including the billions of dollars lost a result of the reckless CDO strategy (Cplt., ¶ 29); the unjustifiable "reward" of over $160 million paid to Defendant O'Neal (Cplt., ¶ 59); and the costs of defending the Company from the class actions brought against it – none of which involve any allegation that the federal securities laws were violated or require the trial court to determine issues of federal law.

All of Plaintiff's allegations can and should be adjudicated in New Jersey state court.

## ARGUMENT

### DEFENDANT'S REMOVAL OF THIS ACTION WAS IMPROPER BECAUSE THE COMPLAINT DOES NOT ALLEGE ANY CLAIMS FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

A fair reading of the Complaint reveals purely state-law claims which do not "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 312 (2005).

4

A.     **There Are No Disputed and Substantial
        Federal Securities Laws Issues**

Defendant repeatedly cites paragraph 73(b) of the Complaint (see, e.g., Defs. Br.

at 3, 4, 7, 9), in a vain attempt to re-cast the Complaint as having causes of action which

implicate violations of federal law. The Court should reject such tactics. The heart of this

Complaint does not involve allegations that the Director Defendants caused false

statements to be issued in Merrill's SEC filings. Rather, central to the Complaint is the

allegation that the Director Defendants breached their fiduciary duties by recklessly

ignoring Merrill's imprudent overexposure to billions of dollars of risky investments.

Cplt., ¶ 2 (the action seeks to remedy Defendants' breach of fiduciary duties); id., ¶¶ 21-

25 (enumerates the numerous duties that the Director Defendants failed to adhere to); id.,

¶¶ 44-55 (discusses the overexposure to CDOs and the fact that the Director Defendants

did not question this imprudent investment strategy).

Plaintiff does not allege that the damages were necessarily caused to the Company

by the violations of the securities laws. To the contrary, the relief requested derives from

the necessary and substantial violations of state law vis-à-vis the Director Defendants'

voluntary abdication of their fiduciary responsibilities, which resulted in tens of billions

of dollars in damages to Merrill from February 2007 through the third fiscal quarter of

2007.

Moreover, Defendant's attempt to justify their argument that a federal issue is

substantial and necessary to the adjudication of Plaintiff's claims by citing to 8

paragraphs of the 97 paragraph Complaint that mention the securities laws is flawed.

Defs. Br. at 7. Not one of these paragraphs can be viewed as containing a necessary or

substantial element of any of Plaintiff's claims because the substantial damages incurred

by the Company arose from the Director Defendants' violations of their duties of loyalty and good faith when they violated their own credit risk policies and caused the Company to engage in unsound underwriting practices. See, e.g., Gargiulo v. Decker, No. SACV05-00103, 2005 U.S. Dist. LEXIS 6002 at *2-4 (C.D. Cal. March 30, 2005).

In Gargiulo, plaintiff brought a shareholder derivative suit under state statutory and common law on behalf of Conexant Systems, Inc. Defendants removed the action to federal court and the plaintiff moved to remand the action. In remanding the action, the court took note that the complaint made numerous references to the federal securities laws:

> (1) Individual Defendants "participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and [SEC] filings,"
>
> (2) the Individual Defendants had a duty to:
>
> (a) "ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and investing public,";
>
> (b) "to comply with federal and state securities laws,"; and
>
> (c) "ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations,";
>
> (3) "In addition, as a result of defendants' illegal actions and course of conduct . . . the Company is now the subject of several class action law suits that allege violations of federal securities laws. As a result, Conexant has expended and will continue to expend significant sums of money,"; and
>
> (4) Plaintiff has not made any demand on the board of Conexant to bring suit since:
> (a) "it is their actions that have subjected Conexant to millions of dollars in liability for possible violations of applicable securities laws,"; and

(b) "[a]ny suit by the current directors . . . would likely expose the Individual Defendants and Conexant to further violations of the securities laws . . .."

Id. at *5-6 (internal citations omitted) (emphasis added).

Nevertheless, the court remanded the action and dismissed nearly identical arguments as those made by Defendant here. The court held that despite all of the references to the federal securities laws, the federal issues were not "essential elements of any of Plaintiff's state law claims." Gargiulo, 2005 U.S. Dist. LEXIS 6002 at *6 (emphasis added). Significantly, the court found that "the complaint does not refer to specific provisions of federal securities laws allegedly violated herein. The general references to the federal securities laws are never made as the sole or predominant reason for Plaintiff's claims." Id. at *8 (emphasis added).

In the instant litigation, the Complaint may mention the federal securities laws, but the sole allegation in the Complaint concerning the violation of the federal securities laws are contained in only one paragraph out of the 97 paragraphs in the Complaint, namely, paragraph 73(b), which Defendant cites to 9 times in their brief. The allegation that Director Defendants' caused legal liability for Merrill by violating the securities laws, however, was asserted in order to demonstrate that demand on the Director Defendants would be futile and not for the purpose of establishing any liability on the part of the Director Defendants for violation of the federal securities laws.

Contrary to Defendant's assertions, the Complaint is not "actually replete with allegations that Merrill Lynch's board of directors violated the federal securities laws." Defs. Br. at 1. Indeed, the necessary and substantial allegations laid out in the Complaint stem from the violations of the Director Defendants' duties to enforce the Company's

7

risk management policies and procedures so as to not overexpose the Company to injurious high risk; a claim created and controlled by under state law. The Complaint contains <u>specific</u> allegations that the Director Defendants breached their fiduciary duties and caused Merrill to suffer billions of dollars in losses. Cplt., ¶ 1 ("connection with breaches of their fiduciary duties of loyalty, due care and oversight of Merrill's imprudent underwriting of [CDOs] and insufficient internal controls and mismanagement by the Company's managing senior executives between 2003 and 2007"); <u>id.,</u> ¶ 2 ("This shareholder derivative suit seeks to remedy Defendants' breach of fiduciary duties, abuse of control, and gross mismanagement arising out of a wrongful course of business conduct..."), <u>id.,</u> ¶¶ 21-25 ("Defendants' Duties"); <u>id.,</u> ¶¶ 26-30 (describing Director Defendants' failure to adhere to Merrill's internal risk management program); <u>id.,</u> ¶¶ 41-42 (Director Defendants' failure to inquire about Merrill's poor investment strategy); <u>id.,</u> ¶¶ 44-55 (describes Merrill's overexposure in CDOs); <u>see also</u> <u>id.,</u> ¶¶ 19, 20, 58-60, 66, 67, 69, 73(a), 73(b)(iii) and (iv), 75-76, 79-81, 82-86, 87-91, 92, 95-97.

Moreover, the facts in <u>Fagin v. Gilmartin</u> are squarely on point. <u>Fagin v. Gilmartin,</u> No. 03-2631, 2007 U.S. Dist. Lexis 7256 (D.N.J. Feb. 1, 2007) (Chesler, J.). Indeed, Defendant's attempts to distinguish <u>Fagin</u> are not only unpersuasive; they squarely support Plaintiff's position. Defendant contends that in <u>Fagin</u> "plaintiff's complaint did not allege that the directors were liable for violating the federal securities laws and plaintiff's right to relief did not depend on the construction of federal law." Defs. Br. at 12. This statement, however, misses the point. <u>Fagin</u> holds that even though the complaint "alleg[es] that one component of the alleged wrongdoing was, in essence,

making false filings with the SEC (<u>id.</u> at *13), such allegations did not "<u>raise a substantial</u> <u>and disputed question of federal law.</u>" <u>Id.</u> at *13.

Thus, the <u>Fagin</u> court rejected the very same argument that Defendant advances here -- namely, that the merits of the plaintiff's state law claims necessarily required the court to resolve whether the acts alleged to constitute breach of fiduciary duty violated federal securities laws. <u>Id.</u> at *13.  In so doing, the court found that the violations of federal securities laws was <u>not</u> an essential element of plaintiff's state law derivative suit alleging state law breaches of fiduciary duty.  The same holds true for Plaintiff's claims herein, <u>i.e.</u>, that Plaintiff's "right to relief [does] not depend on the construction of federal law." Defs. Br. at 12.

**B.    The Courts In <u>Fagin</u> and <u>Gargiulo</u> Disagree with the <u>Wietschner</u> Decision**

Defendant relies heavily on <u>Wietschner v. Gilmartin</u>, No. 02-4879, 2003 U.S. Dist. LEXIS 18997 (D.N.J. Jan. 14, 2003) (Cooper, J.), a decision criticized by two courts, including the <u>Fagin</u> court, for lacking an appropriate analysis.  Indeed, the courts in <u>Fagin</u> and <u>Gargiulo</u> both analyzed the <u>Wietschner</u> decision and flat out disagreed with that court's reasoning, or lack thereof.

In <u>Fagin</u>, the court provided its own legal and factual analysis, and then stated:

> For the reasons discussed above, <u>this Court respectfully disagrees with the</u> <u>analysis of the Wietschner court</u>. At the core of this case, the injuries of which Plaintiffs complain arise from Defendants' alleged breach of duties created and defined by state law. <u>The fact that a court may have to look to</u> <u>federal law to evaluate whether Defendants' alleged misconduct violated</u> <u>their state law obligations does not, in this case, elevate the federal law</u> <u>aspect of the alleged misconduct into a substantial question of federal law.</u>

<u>Fagin</u>, 2007 U.S. Dist. Lexis 7256 at *19 (emphasis added).

The court in <u>Gargiulo</u> reached the very same conclusion:

9

> The rationale of Wietschner is also unhelpful since the court merely stated
> that the breach of fiduciary duty claim was "primarily" based on federal
> securities laws without explaining what made it "primarily" so, and the
> court relied on D'Alessio, which, as described above, is inapplicable.[1]

Gargiulo, 2005 U.S. Dist. LEXIS 6002 (emphasis added).[2]

Accordingly, Plaintiff's allegations of violations of state law do not require interpretation of federal law or any duties which are exclusively federal in nature. Therefore, federal securities law issues are not substantial and necessary issues herein, and as such, this Court lacks jurisdiction over this action.[3]

---

[1]    D'Alessio v. N.Y. Stock Exch., Inc., 258 F.3d 93 (2d Cir. 2001) involved an action premised on duties derived exclusively from federal law -- the Exchange Act of 1934. Here, the duties that the directors were required to abide to are exclusively derived from state law.

[2]    Defendant also incorrectly relies on Gobble v. Hellman, No. 1:02CV0076, 2002 U.S. Dist. LEXIS 26833 (N.D. Ohio Mar. 26, 2002). The Gobble court actually supports Plaintiff's position by acknowledging that "allegations that simply provide a factual basis for a claim and which could independently support either a state law claim or a federal law claim are generally not sufficient to create a substantial question of federal law or to confer jurisdiction to the federal courts." Id. at *8 n.1. Here, the facts in the Complaint strongly and independently support the state law fiduciary duty claims.

[3]    Defendant incorrectly claims that Congress intended shareholder derivative actions containing federal securities laws questions remain in federal court. (Defs. Br. at 13-14). Indeed, the State Law Uniform Standards Act ("SLUSA"), which allows for the removal of any "covered class action" to federal court, has a specific carve out for "an exclusively derivative action brought by one or more shareholders on behalf of a corporation." 15 U.S.C. §.78bb(f)(3)(5)(C); see Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 113 (2d Cir. 2001). Congress intended the shareholder derivative action to remain in state court and removal of this action would "disturb the congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. 308 at 312.

C.    **Plaintiff Does Not Allege**
      **a Cause of Action for Contribution**

Defendant further argues that "implicit within an attempt to recover for legal liability incurred by the Company for alleged violations of the securities laws and ERISA is a claim for contribution." Defs. Br. at 11.

Defendant's argument is particularly odd because the Complaint does not allege <u>any</u> cause of action for contribution or indemnification. In apparent recognition of this fact, Defendant urges this Court to improperly imply such a cause of action. Not surprisingly, Defendant has not cited any case to support this position.

Moreover, in <u>Fagin</u>, where the plaintiff specifically alleged a cause of action for indemnification and contribution for violations under the securities laws, the court held that the state court was the proper forum to evaluate and assess the merits of that cause of action. <u>Fagin</u>, 2007 U.S. Dist. Lexis 7256 at *2-3, 20. Thus, even if the Court were to construe any portion of the Complaint as alleging a claim for either contribution or indemnification, such construction would not confer jurisdiction to this Court.

Defendant also alleges that Plaintiff confines his allegations concerning corporate waste to issues of liability under the federal securities laws. <u>See</u> Defs. Br. at 10. Such a claim is disingenuous at best, since Defendant has intentionally omitted the allegations that are at the heart of Plaintiff's Complaint. For example, in paragraph 93, which is cited by Defendant, Defendant uses an ellipse to omit Plaintiff's allegations that the Director Defendants are liable for corporate waste for, "awarding excessive compensation to senior executives…" <u>See also</u> Cplt., ¶¶ 59, 73(b)(iv). Since Plaintiff has alleged acts of waste which have nothing to do with liability arising under with the federal securities

11

laws or ERISA, and instead directly impact state laws of corporate waste, Defendant's

argument that Plaintiff's claims belong in federal court is without merit.

Thus, Defendant's argument that Plaintiff is seeking contribution under a federal

statute in this shareholder derivative action is incorrect as a matter of both fact and law.

Accordingly, this action should be remanded to the Superior Court of New Jersey.

### CONCLUSION

On the basis of the foregoing and the entirety of the record in this action, Plaintiff

respectfully requests that this Court immediately remand this improperly removed

shareholder derivative action to the Superior Court of New Jersey, Bergen County, Law

Division.

Dated: February 25, 2008

LAW OFFICES OF JAMES V.
BASHIAN, P.C..
By: /S/ James V. Bashian
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Paul O. Paradis, Esq.
Michael A. Schwartz, Esq.
Gina M. Tufaro, Esq.
Edward Kroub, Esq.
**HORWITZ, HORWITZ &**
**PARADIS, Attorneys at Law**
28 West 44th Street, 16th Floor
New York, NY 10036
Phone: (212) 404-2200
Fax:     (212) 404-2226

Attorneys for Plaintiff

12

LAW OFFICES OF JAMES V. BASHIAN, P.C.
James V. Bashian, Esq. (JB-6331)
271 Route 46 West, Suite F207
Fairfield, New Jersey 07004
Tel: (973) 227-6330
Fax: (973) 808-8665

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| David Eidman,<br>Derivatively On Behalf of<br>MERRILL LYNCH & CO., INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>ERNEST STANLEY O'NEAL,<br>CAROL T. CHRIST, ARMANDO M.<br>CODINA, VIRGIS W. COLBERT,<br>ALBERTO CRIBIORE, JOHN D.<br>FINNEGAN, JUDITH MAYHEW JONAS,<br>AULANA L. PETERS, JOSEPH W.<br>PRUEHER, ANN N. REESE and<br>CHARLES O. ROSSOTTI,<br><br>       Defendants,<br><br>and<br><br>MERRILL LYNCH & CO., INC.,<br><br>       Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **CASE NO. 08-CV-00126 (SDW)(MCA)**<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>   **ELECTRONICALLY FILED** |

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2008, I electronically filed and served the foregoing Reply Brief in Further Support of Plaintiff's Motion to Remand and Certificate of Service with the Clerk of the District Court using the CM/ECF system pursuant to Local Civil Rule 5.2 on:

Michael R. Griffinger
GIBBONS, P.C.
One Gateway Center
Newark, NJ 07102-5310

Also, on February 25, 2008, I caused a true and correct copy of the foregoing Reply Brief in Further Support of Plaintiff's Motion to Remand and Certificate of Service upon the following counsel by regular mail:

Jay B. Kasner, Esq.
Scott D. Musoff, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036

Michael J. Chepiga, Esq.
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954

Dennis Block, Esq.
Jason M. Halper, Esq.
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ James V. Bashian
JAMES V. BASHIAN

2

# EXHIBIT E

# HORWITZ, HORWITZ & PARADIS

### ATTORNEYS AT LAW
28 WEST 44TH STREET, 16TH FLOOR
NEW YORK, NY 10036
TELEPHONE (212) 404-2200
FACSIMILE  (212) 404-2226

CHICAGO OFFICE:
25 E. WASHINGTON STREET
SUITE 900
CHICAGO, IL 60602
TELEPHONE (312) 372-8822
FACSIMILE  (312) 372-1673

May 5, 2008

**BY HAND DELIVERY**

Hon. Leonard B. Sand
United States District Court,
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 1650
New York, NY 10007

Re:    <u>Eidman v. O'Neal, et al.</u>, Civil Action No. 08-00126 (SDW) (MCA)
<u>In re: Merrill Lynch & Co., Inc., Securities, Derivative & ERISA Litigation</u>,
MDL No. 1933, 08-md-01933-LBS

Dear Judge Sand:

We are co-counsel for plaintiff David Eidman ("Plaintiff") in the referenced derivative action transferred to this Court pursuant to the April 07, 2008 Transfer Order of the Judicial Panel on Multidistrict Litigation ("JPMDL") for coordinated and consolidated pretrial proceedings with <u>In re: Merrill Lynch & Co., Inc., Securities, Derivative & ERISA Litigation</u>.

We write to request that this Court hear Plaintiff's Motion to Remand, which, at the time the Transfer Order was entered, was fully briefed and pending before the Honorable Susan Wigenton, U.S.D.J., for the District of New Jersey.

Plaintiff filed his shareholder derivative complaint (the "Complaint") on December 4, 2007 in New Jersey Superior Court, Bergen County.   On January 9, 2008, nominal defendant Merrill Lynch & Co., Inc. ("Merrill") removed the action to the District of New Jersey arguing that the claims asserted in the Complaint arose under federal law.   Merrill concurrently moved the JPMDL to transfer this action to the Southern District of New York and filed a Motion to Stay the proceedings pending the decision of the JPMDL.

On January 23, 2008, Plaintiff moved the New Jersey District Court to remand this action to the New Jersey Superior Court pursuant to 28 U.S.C. § 1447(c) on grounds that the District

# HORWITZ, HORWITZ & PARADIS
**ATTORNEYS AT LAW**

Hon. Leonard B. Sand, U.S.D.J.
May 5, 2008
Page 2 of 3

Court did not have original jurisdiction over this action because: (i) the Complaint did not allege any federal claims; and (ii) there was a lack of "complete" diversity.

Because this Court lacks original jurisdiction over this improperly removed action, plaintiff hereby requests that this Court hear Plaintiff's Motion to Remand at its earliest convenience.

We are enclosing herewith courtesy copies of the fully-briefed Motion to Remand:

(a)     Notice of Motion to Remand, Memorandum of Law in Support of Plaintiff's Motion to Remand, Proposed Order of Remand and Certificate of Service;

(b)     Memorandum of Law of Merrill Lynch & Co., Inc. in Opposition to Plaintiff's Motion to Remand and Certificate of Service; and

(c)     Reply Brief in Further Support of Plaintiff's Motion to Remand and Certificate of Service.

Respectfully submitted,

Michael A. Schwartz

cc:   Jay Kasner (via mail and email)
      Scott Musoff (via mail and email)
      Michael R. Griffinger (via mail and email)
      Geoffrey Alec North (via mail and email)
      James V. Bashian (via email)
      A. Arnold Gershon (via mail and email)
      Arthur M. Stock (via mail and email)
      Aviah Cohen- Pierson (via mail and email)
      Donald R. Hall, Jr. (via mail and email)
      Frederic Scott Fox, Sr. (via mail and email)
      Jeffrey Alan Barrack (via mail and email)
      Jeffrey Philip Campisi (via mail and email)
      Joel B. Strauss (via mail and email)
      Lane Lanier Vines (via mail and email)
      Lawrence Jay Lederer (via mail and email)
      M. Richards Komins (via mail and email)
      Merrill G. Davidoff (via mail and email)
      Regina Marie Calcaterra (via mail and email)

# HORWITZ, HORWITZ & PARADIS
ATTORNEYS AT LAW

Hon. Leonard B. Sand, U.S.D.J.
May 5, 2008
Page 3 of 3

    Robert N. Kaplan (via mail and email)
    David Avi Rosenfeld (via mail and email)
    Jack Gerald Fruchter (via mail and email)
    Samuel Howard Rudman (via mail and email)
    Brett M Weaver (via mail)
    Francis A. Bottini (via mail)
    Frank J. Johnson (via mail)
    Thomas G. Amon (via mail and email)
    Arvind Khurana (via mail and email)
    Lori Gwen Feldman (via mail and email)
    Sara Esther Fuks (via mail and email)
    Edward W. Ciolko (via mail and email)
    Joseph H. Meltzer (via mail and email)
    Joseph A. Weeden (via mail)
    Katherine B. Bornstein (via mail and email)
    Wai Kin Chan (via mail and email)
    Thomas James Mckenna (via mail and email)
    Richard B. Brualdi (via mail and email)
    Robert A. Izard (via mail)
    William Edward Bernarduci (via mail and email)
    Jill Sharyn Abrams (via mail and email)
    Bruce F. Rinaldi (via mail and email)
    Lynda J. Grant (via mail and email)
    Marc Ira Machiz (via mail and email)
    Michelle Celia Yau (via mail and email)
    Marc Ian Gross (via mail and email)
    Christopher J. Keller (via mail and email)
    Ralph M. Stone (via mail and email)
    Thomas George Ciarlone, Jr. (via mail and email)
    Edwin J. Mills (via mail and email)

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

DAVID EIDMAN,

                      Plaintiff,           :      **ORDER**

   -against-                     :      08 Civ. 126 (SDW)(MCA)

ERNEST STANLEY O'NEAL, et al.     :

                  Defendants.    :
-----------------------------------------------------------x
In re: MERRILL LYNCH & CO., INC.,    :      07 Civ.9633 (LBS)
    Securities, Derivative & ERISA Litigation
-----------------------------------------------------------x

SAND, J.

        By letter dated May 5, 2008, counsel for plaintiff David Eidman asks this Court to

hear his motion to remand this case to the District of New Jersey alleging that it was fully briefed

and pending at the time of the transfer order.  Plaintiff asks that this Court hear the motion to

remand "at its earliest convenience".  No other party has as yet responded to this letter.

        The Court believes that serious questions may exist as to the appropriateness of

separate consideration of the motion to remand prior to further proceedings of the cases now

consolidated pursuant to the transfer order.

        The Court directs that counsel for Merrill Lynch and plaintiff brief to this court

the question whether it is appropriate for the Court now to consider the aforementioned motion to

remand separate and apart from any further proceedings in the consolidated cases.  Any other

party wishing to express its views on this issue is of course free to do so.  All such submissions

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5-12-08

shall be filed on or before June 12, 2008.

SO ORDERED.

Dated:       New York, New York
             May 12, 2008

_____
                    U.S.D.J.